UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOAN E. EVANS,

                 Plaintiff,

        v.                                    Civil Action No. 6:11-CV-01248
                                                             (LEK-DEP)

EXCELLUS HEALTH PLAN, INC. d/b/a EXCELLUS
BLUECROSS BLUESHIELD; HELEN ROSER; LYNN
MAROLF; CHRISTOPHER BOOTH; and JOHN
DOE(S) AND JANE DOE(S),

                 Defendants.

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
# AND THE AMENDED COMPLAINT

BOND, SCHOENECK & KING, PLLC
*Attorneys for Defendants*
Laura H. Harshbarger, Esq.
Peter A. Jones, Esq.
Office and Post Office Address
One Lincoln Center
Syracuse, New York  13202
Telephone:  (315) 218-8000

1931174.1

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

    POINT I ..........................................................................................................2

        PLAINTIFF'S ADEA AND ADA CAUSES OF ACTION ARE TIME-
        BARRED ..........................................................................................2

    POINT II .........................................................................................................5

        PLAINTIFF'S ARGUMENTS DO NOT SAVE HER *PRIMA FACIE*
        TORT CLAIM ...................................................................................5

    POINT III ........................................................................................................6

        PLAINTIFF MAY NOT MAINTAIN A PUBLIC POLICY, IMPLIED
        CONTRACT OR ERISA CLAIM ......................................................6

CONCLUSION ......................................................................................................11

1931174.1

TABLE OF AUTHORITIES

CASES                                                                                    Page

*10 Ellicott Sq. Ct. Corp. v. Violet Realty, Inc.,*
    81 A.D.3d 1366.................................................................................................6

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009).......................................................................................7

*Bell Atlantic v. Twombly,*
    127 S. Ct. 1955 (2007).......................................................................................7

*Casa de Meadows Inc. (Cayman Islands) v. Zaman,*
    76 A.D.3d 917, 908 N.Y.S.2d 628 (4th Dep't 2010) ..........................................6

*Cotton v. Mass. Mut. Life Ins. Co.,*
    402 F.3d 1267 (11th Cir. 2005)..........................................................................8

*DeLaurentis v. Job Shop Tech. Servs., Inc.,*
    912 F.Supp. 57 (S.D.N.Y. 1996).........................................................................9

*DeLuca v. Blue Cross Blue Shield of Michigan,*
    628 F.3d 743 (6th Cir. 2010) ..............................................................................8

*Donohue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and*
    *Vacation and Sick Leave Trust Funds,*
    12 F.Supp.2d 273 (E.D.N.Y. 1998) ....................................................................7

*Federal Express Corp. v. Holowecki,*
    552 U.S. 389, 128 S. Ct. 1147 (2008) ......................................................2, 3, 4

*Haddle v. Garrison,*
    525 U.S. 121, 199 S.Ct. 489 (1998)....................................................................5

*McKinnon v. Blue Cross and Blue Shield of Alabama,*
    935 F.2d 1187 (11th Cir. 1991)...........................................................................8

*Morrow v. Metro. Transit Auth.,*
    2000 U.S. Dist. LEXIS 39252 (S.D.N.Y. May 8, 2009) ......................................3

*Mulder v. Donaldson, Lufkin & Jenrette,*
    161 Misc. 2d 698 (Sup. Ct. N.Y. County 1994)...................................................9

*Mulder v. Donaldson, Lufkin & Jenrette,*
    208 A.D.2d 301, 623 N.Y.S.2d 560 (1st Dept. 1995) .........................................9

1931174.1

*Murphy v. Am. Home Products,*
    58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983)...........................................4, 5

*Nicolaou v. Horizon Media, Inc.,*
    402 F.3d 325 (2d Cir. 1997) .......................................................................................10

*Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance
    Co.,*
    700 F.2d 889 (2d Cir. 1983), *cert. denied*, 464 U.S. 845 (1983)....................................7

*Price v. City of New York,*
    2011 U.S. Dist. LEXIS 67419 (E.D.N.Y. June 20, 2011) ..................................................4

*Protocare of Metropolitan N.Y. v. Mutual Ass'n Admins., Inc.,*
    866 F.Supp 757 (S.D.N.Y. 1994)...................................................................................9

*Sherman v. New York Public Library,*
    2008 U.S. Dist. LEXIS 36453 (E.D.N.Y. Apr. 30, 2008) ..................................................4

*Simpson v. N.Y.C. Dep't of Hous. Pres. and Dev.,*
    2009 U.S. Dist. LEXIS 58766 (S.D.N.Y. Apr 13, 2009).....................................................3

*Yong Wen Mo v. Gee Ming Chan,*
    17 A.D.3d 356, 792 N.Y.S.2d 589 (4th Dep't 2005) ........................................................6

**STATUTES**

29 U.S.C. § 1002(21)............................................................................................................9

29 U.S.C. § 1002(21)(A) .......................................................................................................7

29 U.S.C. § 1132(a)(3) .........................................................................................................6

29 U.S.C. § 1140 ("Section 510") .........................................................................................6

**OTHER AUTHORITIES**

29 CFR § 2509.75-8 ............................................................................................................8

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) .......................................................1

1931174.1

## PRELIMINARY STATEMENT

Defendants Excellus Health Plan, Inc. d/b/a Excellus BlueCross BlueShield ("Excellus"), Helen Roser, Lynn Marolf, and Christopher Booth (referred to collectively as the "Defendants"), submit this Memorandum of Law in further support of their Motion to Dismiss the Complaint, and now also the Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff's causes of action all relate to her termination from Excellus.

Plaintiff's Amended Complaint is identical to her original Complaint with one exception: she has added a cause of action for retaliation pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Aside from this new claim, Plaintiff reasserts that her termination was in violation of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Human Rights Law of the State of New York ("Human Rights Law"), and public policy, and that her discharge constitutes a breach of an implied contract and a prima facie tort.

Based on Plaintiff's opposition papers, Defendants no longer seek the dismissal of her Human Rights Law claim. Defendants firmly believe that they will be granted summary judgment on that claim at the conclusion of discovery. However, they no longer request dismissal at this stage.[1]

As to Plaintiff's other causes of action, Defendants continue to maintain that her ADEA and ADA causes of action are barred for failure to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of her termination. Defendants continue to maintain that Plaintiff's public policy, implied

---

[1] Defendants intend to answer those allegations pursuant to Rule 12(a)(E) following this Court's ruling on this motion.

1931174.1

contract, and prima facie tort claims fail as a matter of New York State law.  Finally, Plaintiff's new ERISA retaliation cause of action cannot be maintained on the alleged facts.

**POINT I**

**PLAINTIFF'S ADEA AND ADA
CAUSES OF ACTION ARE TIME-BARRED**

Plaintiff was terminated from employment by Excellus on November 18, 2009.  *See* Amended Complaint, ¶¶ 14, 23.  Plaintiff's official Charge with the EEOC is dated November 24, 2010.  *See* Harshbarger Affirmation[2] ¶ 3.  This is 371 days after the alleged discriminatory event.

In opposition to Defendants' motion to dismiss, Plaintiff submitted the first page of an EEOC Intake Questionnaire which she faxed to the EEOC on September 14, 2010 (i.e., the 300th day after her termination).  Plaintiff relies on the U.S. Supreme Court's decision in *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 128 S. Ct. 1147 (2008) to support her theory that this Intake Questionnaire is a Charge and, therefore, that she has timely filed.  Plaintiff reads the *Holowecki* holding too broadly.  It does not stand for the proposition that an Intake Questionnaire by itself is necessarily a timely filed Charge. *See Holowecki*, 128 S. Ct. at 1157 (rejecting plaintiff's "stripped-down" standard under which "anyone who completes an Intake Questionnaire" would likely create a charge).  In fact, the Court stated that, if the Questionnaire were the only document submitted, it may have declined to find that it constituted a "charge." *Id.* at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action.").  However, the plaintiff in that case filed

---

[2]  Our references here are to the attorney affirmation filed with our original motion papers.

1931174.1

not only the Intake Questionnaire but also a detailed six (6) page affidavit which included a specific request for EEOC intervention and relief.  The affidavit ended with the plea that the EEOC "please force" the employer to cease the alleged discriminatory practice.  *Id.* at 1159-60.  Additionally, the plaintiff's documents contained her consent to the disclosure of her identity and the attached affidavit.  *Id.* at 1160.  The Court found that the combination of all of these elements together – the waiver of confidentiality, the signed affidavit describing in detail the discriminatory employment practices, and the explicit request for the agency to act – constituted a "charge." *Id.* at 1159-60.

Decisions following *Holowecki* confirm that Plaintiff is held to a higher standard than merely stating that she timely filed an Intake Questionnaire with the EEOC.  *See, e.g., Morrow v. Metro. Transit Auth.,* 2000 U.S. Dist. LEXIS 39252, at *14 (S.D.N.Y. May 8, 2009)("Like the questionnaire considered in *Holowecki*, the questionnaire that [plaintiff] completed does not, taken on its own terms, constitute a charge of discrimination.").  In *Broich v. Southampton*, the court found that the plaintiff's Intake Questionnaire did not constitute a charge of discrimination  because "[u]nlike the Intake Questionnaire in *Holowecki*, which was supplemented by a six (6) page affidavit detailing the alleged discrimination and [containing] a clear request that the agency act to stop the discrimination," the plaintiff's Intake Questionnaire was "devoid of any request that the EEOC act to stop the alleged discrimination" and provided "no evidence that the plaintiff intended to activate the administrative process." 2011 U.S. Dist. LEXIS 6958, at *20-22 (E.D.N.Y. Jan. 25, 2011) (citing *Holowecki*, 128 S.Ct. at 1159).  *See also Morrow,* 2009 U.S. Dist. LEXIS 39252, at *14 (completed Intake Questionnaire and attached paragraph did not constitute a charge); *Simpson v. N.Y.C. Dep't of Hous. Pres.*

3

*and Dev.*, 2009 U.S. Dist. LEXIS 58766, at *18-19 (S.D.N.Y. Apr 13, 2009) (Intake

Questionnaire alone insufficient to constitute a charge).  *Cf. Price v. City of New York*,

2011 U.S. Dist. LEXIS 67419, at *17-19 (E.D.N.Y. June 20, 2011) (*Holowecki* standard

met where plaintiff's submission included Intake Questionnaire plus 45 pages of

"extensive documentation" demanding an end to the discrimination and remedies for his

treatment).

      At the time she filed her opposition papers, Plaintiff was on notice that

Defendants were challenging the timeliness of her filing.  In her opposition papers,

Plaintiff relies exclusively on her September 14, 2010 Intake Questionnaire to establish

her timeliness.  Yet, Plaintiff has provided only the first page of what appears to be a

four (4) page document.  The single page provided by the Plaintiff does not contain the

*Holowecki* elements and evidences no explicit request that the EEOC take enforcement

action, as was the crux of the *Holowecki* Court's holding.  *See Sherman v. New York*

*Public Library*, 2008 U.S. Dist. LEXIS 36453, at *15 (E.D.N.Y. Apr. 30, 2008)

(measuring timeliness from the formal charge because where a "plaintiff has not

provided a copy of the Intake Questionnaire or the documents submitted to the EEOC, it

cannot be ascertained whether those documents could be reasonably construed as a

request for the agency to take remedial action.").  Thus, Plaintiff has not provided

documentary evidence to this Court which would allow it to conclude that she timely

filed a Charge, and the causes of action are subject to dismissal.

4

## POINT II

## PLAINTIFF'S ARGUMENTS DO NOT SAVE HER
### *PRIMA FACIE* TORT CLAIM

In our original motion papers, we cited *Murphy v. Am. Home Products,* 58 N.Y.2d 293, 297, 448 N.E.2d 86, 87, 461 N.Y.S.2d 232, 233 (1983). *Murphy* and its progeny are practically black letter law in New York that *prima facie* tort will not lie in wrongful discharge cases.  We will not reiterate all of the originally cited case law here.  It suffices to say that our original motion papers cite ample authority for the principal that a plaintiff cannot "dress up" a wrongful discharge claim in *prima facie* tort clothes.

Notably, Plaintiff's opposition papers do not distinguish or even discuss *Murphy*. Rather than address the actual issue, Plaintiff cites wholly inapposite U.S. Supreme Court authority, *Haddle v. Garrison*, 525 U.S. 121, 125, 199 S.Ct. 489 (1998).  *Haddle* involved a §1985(2) claim, which proscribes conspiracies to intimidate federal court witnesses.  Haddle's holding is that a conspiracy in violation of §1985 which results in the loss of at-will employment is generally compensable because it is akin to a tortious interference with contract claim.  525 U.S. at 126.  *Haddle* has nothing to do with the New York state law which governs here.  In fact, Haddle has nothing at to do with a *prima facie* tort cause of action at all.  Plaintiff seems to rely on *Haddle* to the extent it speaks to tortious interference with contract claims, but Plaintiff has not pled tortious interference with contract.  Plaintiff cannot save her *prima facie* tort claim by asserting that a wholly different cause of action has been recognized in a drastically different context.

1931174.1

In sum, decades of precedent make clear that *prima facie* tort is simply not cognizable where a person claims of wrongful or abusive discharge, and Plaintiff has not offered anything to the contrary.

In her opposition papers, Plaintiff also contends that the applicable statute of limitations for a *prima facie* tort claim is three (3) years.  Admittedly, there was conflicting authority on this issue in the past.  We respectfully submit that the state courts' more recent view is to apply a one (1) year statute of limitations for a *prima facie* tort claim particularly where, as here, the allegation is that the harm was intentional.  *See e.g.*, *10 Ellicott Sq. Ct. Corp. v. Violet Realty, Inc.*, 81 A.D.3d 1366; 916 N.Y.S.2d 705 (4th Dep't 2011) (acknowledging decisional conflict but finding 1 year statute applicable); *Casa de Meadows Inc. (Cayman Islands) v. Zaman*, 76 A.D.3d 917, 908 N.Y.S.2d 628 (4th Dep't 2010); *Yong Wen Mo v. Gee Ming Chan*, 17 A.D.3d 356, 792 N.Y.S.2d 589 (4th Dep't 2005).

For the above reasons, Plaintiff's Sixth Cause of Action must be dismissed.

## POINT III

### PLAINTIFF MAY NOT MAINTAIN A PUBLIC POLICY, IMPLIED CONTRACT OR ERISA CLAIM

Plaintiff's First Cause of Action is framed as a "violation of public policy and/or breach of an implied contract and/or ERISA".  *See* Amended Complaint, Pg. 3.

1.    The facts do not state a claim under §510 of ERISA.

Plaintiff's Amended Complaint adds a cause of action under Title 29 U.S.C. § 1140 ("Section 510"), which is the anti-retaliation provision of Employee Retirement Income Security Act of 1974 ("ERISA").  *See* Amended Complaint ¶¶ 11-17. Specifically, Plaintiff alleges she was fired for "alert[ing] Defendant Booth and others to

6

an unlawful practice of Excellus charging Medicare retirees a penalty," and, therefore, her termination violates §510 of ERISA.  *See id.*  As discussed more fully below, Plaintiff's ERISA claim must be dismissed because she has not, and cannot, plead facts sufficient to show that she has standing to sue under ERISA.

The law is clear that a civil action pursuant to ERISA may be brought in federal court *only* by a "participant, beneficiary, or fiduciary" of an ERISA plan.  *See* 29 U.S.C. § 1132(a)(3); *Pressroom Unions-Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir. 1983), *cert. denied*, 464 U.S. 845 (1983); *Donohue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds*, 12 F.Supp.2d 273, 278-79 (E.D.N.Y. 1998) ("The Second Circuit has held that this list [under Section 1132(a)] is exclusive.").  Plaintiff is not, nor does she claim to be, a participant or beneficiary of an ERISA plan at issue in this case.

Thus, the only remaining avenue to suit is as a fiduciary.  However, Plaintiff is *not* a fiduciary as defined in ERISA.[3]

ERISA states, in relevant part:

> a person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

---

[3]  Plaintiff's conclusory allegation that she had a "fiduciary duty to address irregularities" under ERISA (*see* Amended Complaint ¶ 15) is insufficient to defeat a motion to dismiss.  As the Supreme Court has articulated, the tenet that a court must accept a complaint's allegations as true does *not* apply to legal conclusions.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *accord, Iqbal*, 129 S. Ct. 1937 ("Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice.").  Plaintiff has not pled any facts at all regarding her duties at Excellus (not even her job title), let alone sufficient facts that she performed the sort of non-ministerial functions sufficient meet the high bar of a plan fiduciary within the meaning of ERISA.

7

     (i)      he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

     (ii)    he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  Furthermore, as discussed at length in the Department of

Labor's regulations interpreting ERISA, "[o]nly persons who perform one or more of the

functions described in [29 U.S.C. § 1002(21)(A)] of the Act with respect to an employee

benefit plan are fiduciaries."  29 CFR § 2509.75-8 at Question D-2.  The regulations

further provide that "persons who have no power to make any decisions as to plan

policy, interpretations, practices or procedures," and thus perform "purely ministerial

functions," are not fiduciaries.[4]  *See id.*

      Notably, not even Excellus is a fiduciary in all contexts.  *See DeLuca v. Blue*

*Cross Blue Shield of Michigan*, 628 F.3d 743, 747 (6th Cir. 2010) (insurer is not plan

fiduciary under ERISA where it merely makes business decisions that have an effect on

an ERISA plan); *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir.

2005) (quoting *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life*

*Assurance Soc'y*, 841 F.2d 658, 664 (5th Cir. 1988)) ("Simply urging the purchase of its

products does not make an insurance company an ERISA fiduciary with respect to

those products.").  Plaintiff alleges that the issue she discovered concerned fees being

charged to insureds.  Thus, on the facts alleged, Excellus was not acting as a plan

---

[4] The regulations explain that the performance of ministerial functions includes, among other things, the application of rules determining eligibility for participation and benefits, the maintenance of participant records, the calculation of services and benefits, the processing of claims, the collection of contributions, the preparation of reports concerning participants' benefits, and making recommendations to others for decisions with respect to plan administration.  29 CFR § 2509.75-8.

1931174.1

fiduciary but rather implementing business decisions related to its premiums. Obviously, if Excellus is not a plan fiduciary, certainly one of its employees is not.

Even assuming Excellus could be considered a plan fiduciary on the alleged facts, Plaintiff has not pled any facts which would support that *she* occupies such a distinct and discretionary function to be a fiduciary within the meaning of ERISA. Plaintiff has not pled these facts because such facts do not exist.  Plaintiff was a low-level call center employee; she did not have any discretionary authority over plan assets. *See generally* 29 CFR § 2509.75-8 at Questions D-2 – D-5; *McKinnon v. Blue Cross and Blue Shield of Alabama*, 935 F.2d 1187, 1193-94 (11th Cir. 1991) (dismissing ERISA retaliation claim under Section 510 because the plaintiff, a "long term employee of Blue Cross," was "not a fiduciary as that term is defined in 29 U.S.C. § 1002(21)"); *see also DeLaurentis v. Job Shop Tech. Servs., Inc.*, 912 F.Supp. 57, 61-62 (S.D.N.Y. 1996); *Protocare of Metropolitan N.Y. v. Mutual Ass'n Admins., Inc.*, 866 F.Supp 757, 762 (S.D.N.Y. 1994) (dismissing ERISA claims for failure to allege facts sufficient to establish fiduciary status).  Section 510 simply does not apply on these facts, and Plaintiff's new ERISA claim must be dismissed.

    2.    <u>Plaintiff cannot maintain an implied contract theory</u>.

Plaintiff disputes Defendants' contention that New York courts have limited the implied contract exception to the at-will rule to attorneys in law firms.  Plaintiff relies *Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc. 2d 698 (Sup. Ct. N.Y. County 1994), in which the lower court decided to extend the *Wieder* public policy exception to securities dealers. Plaintiff neglects to mention that the *Mulder* decision was appealed, and, on appeal, the Appellate Division, First Department expressly rejected the lower court's attempted

9

expansion of *Wieder*.  The appellate court found that the lower court had "erred" in expanding *Wieder* beyond the law firm setting.  *See Mulder v. Donaldson, Lufkin & Jenrette*, 208 A.D.2d 301, 623 N.Y.S.2d 560 (1st Dept. 1995) ("[T]the IAS Court erred in expanding the holding of Wieder beyond its limited application.").[5]  Indeed, the portion of the lower court's decision quoted by Plaintiff was specifically criticized by the appellate court.  208 A.D. 2d at 305.  Plaintiff's reliance on the rejected language of the lower court  is obviously misplaced.

Plaintiff further relies on *Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325, 330 (2d Cir. 1997) to support her argument that it is appropriate to extend the *Wieder* and/or public policy exception to ERISA plan fiduciaries.  The *Nicolaou* ruling is that an internal investigation may be sufficient to implicate §510's protection against retaliation.  402 F.3d at 329.  There are two flaws in Plaintiff's reliance on *Nicholau*.  First, the plaintiff in that case was an actual ERISA fiduciary.  402 F.3d at 326 ("Nicolau served as a fiduciary and trustee of Horizon's 401(k) benefits plan).  As explained above, Plaintiff in this case is not a plan fiduciary.  Second, *Nicolaou* has nothing to do with *Wieder* or any other public policy exception to the at-will rule; instead, the decision interprets §510 of ERISA.  For the reasons explained above, Plaintiff can assert no cause of action pursuant to §510 of ERISA.

For all the reasons explained in our original memorandum and here, Plaintiff cannot maintain a cause of action that her termination was a violation of ERISA, or constitutes prima facie tort, or  an implied contract.

---

[5]  The Appellate Division ultimately affirmed the IAS court's denial of the motion to dismiss this cause of action, but relied not on a *Wieder* implied contract theory but rather on an express statement by the employer which the Appellate Division found constitutes an express limitation on the right to discharge at-will.  208 A.D. at 307.

1931174.1

## CONCLUSION

For the foregoing reasons, the Amended Complaint is fatally defective and must be dismissed in its entirety, together with such other relief as the court may deem just and appropriate.

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

Dated:  December 9, 2011

By:   /s/ Laura H. Harshbarger
      Laura H. Harshbarger, Esq.
      (Bar Roll No. 509779)
      Peter A. Jones, Esq.
      (Bar Roll No. 506918)
      *Attorneys for Defendants*
      Office and Post Office Address
      One Lincoln Center
      Syracuse, New York  13202
      Telephone:  (315) 218-8000
      Email:  lharshbarger@bsk.com
      Email:  pjones@bsk.com

TO:    A.J. Bosman, Esq.
       Bosman Law Office
       *Attorneys* for *Plaintiff*
       Office and Post Office Address
       6599 Martin Street
       Rome, New York 13440
       Telephone:  (315) 336-9130
       Email:  aj@bosmanlawfirm.com

1931174.1



**MARTY MORROW, Plaintiff, -v- METROPOLITAN TRANSIT AUTHORITY, NEW YORK CITY TRANSIT AUTHORITY, MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Defendants.**

**08 CIV. 6123 (DLC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2009 U.S. Dist. LEXIS 39252*

**May 8, 2009, Decided**
**May 8, 2009, Filed**

**COUNSEL:** [*1] For Plaintiff: John Nicholas Forte, Scott Michael Mishkin, PC, Islandia, NY.

For Defendants: Francine E. Menaker, Office of the General General Counsel, Brooklyn, NY.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINION BY:** DENISE COTE

**OPINION**

*OPINION AND ORDER*

DENISE COTE, District Judge:

The defendants Metropolitan Transit Authority ("MTA"), New York City Transit Authority ("NYCTA") and Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA") have moved to dismiss this employment discrimination action brought by former MTA bus driver Marty Morrow, a 62-year-old African American. For the following reasons, the claims of age discrimination and retaliation are dismissed. Morrow is given leave to replead a single claim of race discrimination.

BACKGROUND

Morrow began employment with the MTA in 1982. On May 11, 2007, a wheelchair-bound passenger fell and hit her head on the sidewalk when the wheelchair lift on Morrow's bus malfunctioned and the wheelchair flipped backwards. Morrow's lawsuit complains of the investigation that followed and that he was subjected to increased supervision. Morrow was eventually placed on restrictive duty, not permitted to drive a bus for six months, and disciplined. On November [*2] 16, 2007, Morrow left the MTA, and asserts that the MTA constructively discharged him.

Morrow wrote to the President of the MTA twice after the May 2007 accident. In a May 15, 2007 letter he complained that the investigator who arrived at the scene of the accident on May 11 compromised the integrity of the evidence. A June 4, 2007 letter asserted that union representatives were getting special treatment and that he was being retaliated against because of a complaint he had made in 2004 about workplace violence. It asked that he not be harassed for minor infractions.

On August 14, 2007, Morrow contacted the United States Equal Employment Opportunity Commission (the "EEOC") and two days later the EEOC sent him a letter and questionnaire to complete. The letter explained that it

appeared, based on the information he had provided, that his situation "may be covered by the laws we enforce." It added that to begin the charge-filing process he had to complete the entire questionnaire immediately since any charge of discrimination had to be filed within 180 days of the date of harm. It advised him that the charge filing process itself can take up to two hours to complete and that information [*3] about those procedures was available on the EEOC web site. Finally, it cautioned that submission of the questionnaire may not meet all requirements for filing a charge, but it would allow the EEOC to determine whether it could assist him.

The questionnaire is titled "Intake Questionnaire." It again advised that a charge of discrimination must be filed within 180 days, or in some places, within 300 days of the alleged discrimination, and that the questionnaire would be reviewed to determine EEOC coverage. Fine print at the end of the questionnaire advised that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will . . . consider it to be a sufficient charge of discrimination." It added, however, that the information on the form would be used "to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counseling as is appropriate." Finally, it explained that while providing the requested information was not mandatory, the failure to answer the question might hamper "the Commission's investigation [*4] of a charge of discrimination."

In his completed questionnaire, which is dated September 6, 2007, Morrow described various disciplinary actions that had been taken against him following the May 15 accident, and checked off boxes for race, age, national origin, and retaliation in response to a question regarding the basis for his claim of discrimination. In a short one-paragraph statement which he attached to the questionnaire, Morrow complained of a leadership style that punishes workers through a punitive discipline system. It states,

> [t]he basis for my claim of employment discrimination is the long standing style of leadership that punishes workers with a excessive and punitive discipline system. Being a educated black man with 25 years behind the wheel of a NYCT bus, I cant help feeling that this bad treatment is because of my race. I dont see the fire dept. or the police dept. going out of there way to give a worker a violation or dismissal for a minor infraction of company rules. the president of my union [compares] MTA NYCT managers . . . to overseers on colonial plantations. Its the unlawful events that occured on the job by my employer, my association with the union president, [*5] the increased surveillance of me behind the wheel, and unjustified negative evaluations from my boss that have lead to this application of employment discrimination. [1]

---

1   The grammatical and spelling errors that appear in this passage appeared in the original submission to the EEOC.

After leaving his job, Morrow filed a formal charge of discrimination with the EEOC. The letter of instructions reminded him "to show a definite connection with, or relationship between the EEO basis you use [e.g., race] and the events you allege are discriminatory." It indicated that documents attached to the intake questionnaire would be used as "background material." In completing a February 8, 2008 Charge of Discrimination form, Morrow checked a box that identified "retaliation" as the basis of the discrimination, and identified the relevant dates as between May 11 and November 16, 2007. This time Morrow did not check the other boxes, which included boxes for race, color and age. Morrow's one-page narrative complaint explained that he believed that he had been disciplined and harassed because he had written the MTA's President. Morrow attached copies of the two letters he had written to the President. Morrow [*6] did not mention his race or age in the narrative paragraph or in the two letters.

On April 8, 2008, the EEOC notified Morrow that it was closing its file and issuing a notice of his right to sue. According to the EEOC, Morrow had failed to identify any protected activity in which he had engaged to support his claim of retaliation.

On July 3, 2008, Morrow filed this action, alleging claims based on race, national origin, and age discrimination and retaliation. In an amended complaint

dated October 2, Morrow reasserted the race, age and retaliation claims pursuant to *42 U.S.C. §§ 2000e et seq.* ("Title VII"), *29 U.S.C. §§ 621 et seq.* ("ADEA") and *42 U.S.C. § 1981* ("*§ 1981*"). Following an initial pretrial conference on December 19, the defendants moved on February 3, 2009 to dismiss this action pursuant to *Fed. R. Civ. P. 12(b)(1), (6)*, and *12(c)*. [2] The motion was fully submitted on February 27, 2009.

> 2   Defendants originally attempted to move to dismiss on February 2, but the motion was terminated because of filing errors. Defendants correctly filed an amended motion to dismiss the following day.

DISCUSSION

The defendants contend that there is no subject matter jurisdiction over the Title VII [*7] and ADEA race and age discrimination claims because Morrow failed to exhaust his administrative remedies for those claims. They assert that the retaliation claim fails to state a claim since the plaintiff has not alleged that he engaged in protected activity before his constructive discharge. Finally, they move to dismiss the *§ 1981* claim on the ground that he has failed to plead that any race discrimination that he experienced was pursuant to an official policy or custom. [3]

> 3   The plaintiff does not oppose that portion of the motion which seeks dismissal of the claim for punitive damages.

Despite defendants' characterization of their motion as motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, the entire motion is properly addressed as one seeking dismissal for failure to state a claim only. "[D]ismissal for failure to exhaust is more properly considered as a dismissal for failure to state a claim pursuant to *Federal Rule of Civil Procedure 12(b)(6)*," not dismissal for lack of subject-matter jurisdiction. *McInerney v. Rensselaer Polytechnic Institute, 505 F.3d 135, 138 (2d Cir. 2007).* "[F]ailure to exhaust [EEOC] administrative remedies is not [*8] a jurisdictional defect." *Fernandez v. Chertoff, 471 F.3d 45, 58 (2d Cir. 2006).*

A trial court considering a *Rule 12(b)(6)* motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008)* (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)* (citation omitted). A court may also consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" on a motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)* (citation omitted).

Motions under *Rule 12(b)(6)* are evaluated according to a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed [*9] to render the claim plausible." *Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008)* (citation omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc., 493 F.3d at 98* (citation omitted).

Under the pleading standard set forth in *Rule 8(a)(2)*, complaints must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P. 8(a)(2).* "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006). Rule 8* is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005).*

While the complaint does not attach Morrow's two letters to the President of the MTA, nor his submissions to the EEOC and the EEOC notice of dismissal, each of these documents is properly considered on this motion. *See ATSI Commc'ns, Inc., 493 F.3d at 98.* The two letters [*10] to the President are integral to the complaint's retaliation claim, since they constitute the alleged protected activity on which that claim depends. The EEOC documents are in the possession of the plaintiff and were relied upon in filing this lawsuit; they constitute the basis for Morrow's assertion that he timely exhausted his administrative remedies before filing this action.

Moreover, Morrow relies in his amended complaint on the September 6, 2007 submission to the EEOC to support its contention that he made a timely complaint of discrimination to the EEOC. Morrow does not object to the Court's consideration of any of these documents in resolving the motion to dismiss. *See Holowecki v. Federal Exp. Corp., 440 F.3d 558, 565 (2d Cir. 2006)* (considering plaintiffs' EEOC filings, even though they were not attached to the complaint, because "plaintiffs[] rely on these documents" to satisfy the ADEA's exhaustion requirement).

1. Failure to Exhaust Race and Age Claims

Plaintiffs seeking to bring suit in federal court under either Title VII or the ADEA are subject to exhaustion requirements requiring timely filings with the EEOC or an authorized state agency. *McPherson v. New York City Dept. of Educ., 457 F.3d 211, 213 (2d Cir. 2006)*; [*11] *Fernandez, 471 F.3d at 54.* A private Title VII plaintiff must undertake two steps to properly exhaust his claims. *McPherson, 457 F.3d at 213.* First, as mentioned above, the plaintiff "must file timely administrative charges with the EEOC." *Id.* The EEOC filing must be made within 300 days of the alleged discriminatory conduct to be considered timely. *42 U.S.C. § 2000e-5(e)(1); Williams v. New York City Housing Authority, 458 F.3d 67, 69 (2d Cir. 2006).* Second, the plaintiff must receive a "Notice of Right to Sue" letter from the EEOC." *Williams, 458 F.3d at 69.* [4]

    4  The regulation from which the requirement that the aggrieved employee receive a "right-to-sue" letter states that:

> If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . ., the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought . . . by the person claiming to be aggrieved. . . .

*42 U.S.C. § 2000e-5(f)(1)* (as quoted in *McPherson, 457 F.3d at 214*).

For ADEA claims, a plaintiff must [*12] also file a timely charge with the EEOC. *McPherson, 457 F.3d at 213.* No right-to-sue letter, however, is required, and "a complainant may exhaust the administrative process by withdrawing agency charges so long as the charge was pending with the EEOC for at least 60 days." *Id. at 214-15.*

The Title VII claim of race discrimination and the ADEA claim of age discrimination must be dismissed for Morrow's failure to exhaust his administrative remedies. The only claim identified in the formal complaint dated February 8, 2008 that Morrow submitted to the EEOC was a retaliation claim based on the two letters he had written to the MTA President in 2007. Neither of those letters, which Morrow attached to his EEOC complaint, alleged that Morrow had been the victim of either race or age discrimination. Thus, Morrow failed to give the EEOC notice of the race and age discrimination claims.

Morrow does not contend that the formal charge he filed with the EEOC preserved his right to bring claims of race or age discrimination pursuant to Title VII and the ADEA, respectively. Morrow instead relies on the recent Supreme Court decision in *Federal Express Corp. v. Holowecki, 552 U.S. 389, 128 S.Ct. 1147, 170 L. Ed. 2d 10 (2008)*, to assert [*13] that his intake questionnaire constituted a formal charge of discrimination or at the very least should be considered incorporated into the formal charge that he later filed with the EEOC. He further asserts that the checked boxes and one-paragraph narrative attached to the questionnaire were sufficient to notify the EEOC that his claims of discrimination were based on his age and race. [5]

    5  This is particularly unlikely for plaintiff's age discrimination claim. In addition to checking the age discrimination box, the only information plaintiff provides on the questionnaire that could possibly indicate an age discrimination claim is a statement that he has 25 years of experience.

*Holowecki*, which addressed the timeliness of an EEOC filing, explained that documents filed by employees with the EEOC "should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id. at 1160; Mathirampuzha v. Potter, 548 F.3d 70, 77 n.6 (2d Cir. 2008)* (citing *Holowecki*). After examining

the regulations governing the filing of ADEA charges of discrimination, [6] the Court determined that the proper test to determine whether a document [*14] is a charge of discrimination under the ADEA is whether the "filing, taken as a whole, should be construed a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Holowecki, 128 S.Ct. at 1155.* To make this determination, the filing "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id. at 1158.* Put otherwise, a charge should include "a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id. at 1157-58.* After all, as the Court observed, many filings come to the EEOC from individuals who have questions and simply want information, and the agency needs to separate information requests from enforcement requests. *Id. at 1157.* Finally, the later filing of a formal charge does not alter the determination, since "[p]ostfiling conduct does not nullify an earlier, proper charge." *Id. at 1160.*

> 6   The Supreme Court cautioned that the relevant regulations for enforcement of Title VII and the American [*15] with Disabilities Act may differ from those governing ADEA claims and require "careful and critical examination." *Holowecki, 128 S.Ct. at 1153.* The parties have not suggested that any differences between the Title VII regulations and the ADEA regulations considered by the Supreme Court are material to the analysis in this case.

In *Holowecki*, the Court noted that the wording of a form questionnaire suggested that it was not a charge of discrimination but was intended to facilitate pre-charge filing counseling and to enable the EEOC to determine whether it had jurisdiction over potential charges. *Id. at 1159.* As a result, the EEOC "is not required to treat every completed Intake Questionnaire as a charge." *Id.* The individual questionnaire at issue at issue in *Holowecki*, however, was supplemented with a detailed six-page affidavit and a request that the agency "please force [the employer] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment." *Id. at 1160* (citation omitted). This constituted a sufficiently clear request for the agency to act that it was properly considered a charge of

discrimination. *Id.*

Like the questionnaire [*16] considered in *Holowecki*, the questionnaire that Morrow completed does not, taken on its own terms, constitute a charge of discrimination. It explained that a completed questionnaire would assist the agency to determine whether it had jurisdiction and whether it could counsel him about filing a formal charge of discrimination. Morrow's completed form and its attached paragraph, taken as a whole and examined from the point of view of an objective observer, is an effort to provide relevant facts to the EEOC so it could make those determinations; it is not a request that the EEOC activate its enforcement machinery. As a result, Morrow did not exhaust administrative remedies regarding his claims of race and age discrimination brought under Title VII and the ADEA.

Given this result, it is unnecessary to determine whether, if Morrow had filed a timely charge of discrimination, he abandoned his race and age discrimination claims when he failed to mention them in his formal charge of discrimination, and as a result, is barred from pursuing them in this litigation. While there are sound reasons for not considering the later-filed formal charge when assessing whether an earlier filing was timely, [*17] *see Holowecki, 128 S.Ct. at 1160*, those reasons largely disappear when the issue at hand is a determination of the scope of the discriminatory conduct that the employee wants the EEOC to investigate and then litigate should mediation prove unsuccessful. [7] After all, the "charge serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Vital v.. Interfaith Med. Ctr., 168 F.3d 615, 619 (2d Cir. 1999)* (citation omitted). Exactly which "mandates" the EEOC will enforce depends on the content of the charge, which informs the EEOC's decision to "to investigate, mediate, and take remedial action." *Shah v. New York State Dept. of Civil Service, 168 F.3d 610, 614 (2d Cir. 1999)* (citation omitted). If the charging instrument does not name a particular type of discrimination or reasonably indicate that a particular type of discrimination has occurred, there is no reason to believe that the EEOC would activate its enforcement mechanism and commence the remedial process *with respect to that specific type of discrimination*. The goals of the exhaustion [*18] requirement would consequently

go unfulfilled.

7   Applications of *Holowecki* in the Courts of Appeal do not address the issue in the instant case, which concerns whether claims raised in a previous submission to the EEOC necessarily inform the scope of conduct that will be investigated in the later-filed formal charge. *See, e.g., EEOC v. Watkins Motor Lines, Inc.,* 553 F.3d 593, 597 (7th Cir. 2009) (a charge withdrawn by an individual may still be pursued by the EEOC); *Holender v. Mutual Industries North Inc.,* 527 F.3d 352, 356 (3d Cir. 2008) (document referring to itself as a "charge" qualified as such).

Neither may the age and race discrimination claims be properly considered as "reasonably related" to the retaliation claim Morrow asserted in his formal charge. Once a plaintiff has properly exhausted a claim "the plaintiff may raise any claim that is 'reasonably related' to those asserted in the EEOC filing." *Ximenes v. George Wingate High School,* 516 F.3d 156, 158 (2d Cir. 2008) (citation omitted). "[A] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that [*19] was made." *Id.* (citation omitted). Courts determining whether two discrimination claims are reasonably related must ask "whether the complaint filed with the EEO gave the agency adequate notice to investigate discrimination on both bases." *Mathirampuzha,* 548 F.3d at 77 (citation omitted). The Second Circuit has recognized a claim of race discrimination as "reasonably related" to a claim of national origin discrimination where an African-American employee charged that employees of Irish descent received preferential treatment. *Id.* It has also held that a sex discrimination claim related to an earlier-filed retaliation charge where the retaliation charge referred to sexual harassment and thus contained "the factual underpinnings of a gender discrimination claim." *Id.* (citation omitted).

Morrow's charge did not contain any indication that race or age discrimination was involved in the retaliatory practices he alleged had occurred. An EEOC investigation regarding whether Morrow had been retaliated against for writing the MTA's President would not reasonably be expected to encompass age or race discrimination, given that Morrow never indicated that he

contacted the MTA's President concerning [*20] age or race discrimination or indicated in the charge that race or age discrimination played a role in the retaliation. There is therefore no basis for finding that the retaliation claim contained the "factual underpinnings" of race or age discrimination charges and that those charges should now be considered along with the properly exhausted claim.

### 2. Retaliation Claim

Title VII forbids employers from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." *42 U.S.C. § 2000e-3(a). Kessler v. Westchester County Dept. of Social Svcs.,* 461 F.3d 199, 205 (2d Cir. 2006). The ADEA also prohibits employers from retaliating against an individual who has opposed any practice made unlawful under the ADEA. *29 U.S.C. § 623(d); Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 241 (2d Cir. 2007). To establish a prima facie case for retaliation under either statute, an employee must show (1) that he engaged in an activity protected under anti-discrimination statutes; (2) that the employer was aware of his participation in the protected activity; (3) that the employer took adverse [*21] action against him; and (4) that a causal connection existed between the employee's protected activity and the adverse action taken by his employer. *Kessler,* 461 F.3d at 205-06. The same standard is applied under *§ 1981. Taitt v. Chemical Bank,* 849 F.2d 775, 777 (2d Cir. 1988).

"Protected activity" is an action taken to protest or oppose an employment practice that is prohibited by these same statutes. *Kessler,* 461 F.3d at 210. The employee meets this standard if he had a "good faith, reasonable belief that he was opposing" such a practice. *Id.* To satisfy the second prong (employer awareness), the reference to discrimination must put the employer on notice that the plaintiff is complaining that his or her rights under the ADEA or Title VII are being violated, although "general corporate knowledge that the plaintiff has engaged in protected activity" is sufficient. *Patane v. Clark,* 508 F.3d 106, 115 (2d Cir. 2007) (citation omitted).

Morrow's formal EEOC charge does not identify any complaint about discriminatory conduct barred by either Title VII or the ADEA. Similarly, his amended complaint in this action fails to identify any protected activity that could trigger a claim of retaliation [*22] under either of

these two statutes. The only complaints to his employer to which Morrow referred in his EEOC complaint and in his amended complaint are the two letters he wrote to the MTA President. Neither of those letters, even when liberally construed, complains of either race or age discrimination.

In opposing dismissal of his retaliation claim, Morrow also relies on the fact that he alluded to race discrimination in the questionnaire that he submitted to the EEOC. The protected activity must, however, put the employer on notice of the claim of discrimination and be causally linked to the adverse employment action of which Morrow complains. Morrow contends that he was constructively discharged in November 2007, but never asserts that the defendants learned prior to that time that he had submitted a questionnaire to the EEOC in early September, much less that they learned the contents of that questionnaire. As a result, any reference in the questionnaire to race or age discrimination does not constitute protected activity that can be linked to Morrow's constructive discharge in November 2007.

### 3. *Section 1981* Claim

*Section 1981* provides in relevant part that "[a]ll persons within the [*23] jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." *42 U.S.C. § 1981*. It includes a prohibition against employment discrimination based on race. *Patterson v. County of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004)*. Unlike Title VII and the ADEA, there is no exhaustion requirement for claims brought under *§ 1981*. *Id. at 225*. When the defendant is a municipality, the plaintiff must show that "the challenged acts were performed pursuant to a municipal policy or custom." *Id. at 226*. A municipality may not be held liable for violating *§ 1981* under a theory of *respondeat superior*. *Id.*

Morrow asserts that the MTA had several policies that were not followed in his case due to race discrimination. For example, he asserts that it is the MTA's policy to meet with a driver who had been involved in an accident during its investigation of the accident, but that the MTA did not meet with him due to discrimination. He complains that a younger, white bus driver who was a union representative was not required to take a fitness-for-duty test after his bus hit a co-worker, even though such tests are required following an accident.

These [*24] allegations do not identify any discriminatory policy or practice. To the contrary, Morrow is asserting that despite the existence of neutral and non-discriminatory policies, he was subjected to discriminatory treatment by his supervisors.

In opposition to the motion, Morrow recasts the allegations in his amended complaint. He asserts that the defendants had a policy of not investigating accidents of white bus drivers, not reprimanding them for accidents, and not forcing them to sit idle for six months following vehicular accidents. Morrow has not asked for leave to replead, but he will be permitted to file a second amended complaint to plead a *§ 1981* claim.

### 4. Proper Defendants

Defendant argues that the NYCTA is not a proper defendant, because plaintiff was employed by MABSTOA, its subsidiary. The complaint alleges that plaintiff was employed by MTA/NYCTA, although plaintiff's opposition does not contest defendants' assertion that he was actually employed by MABSTOA. [8] The parties also agree that plaintiff improperly named the MTA in the amended complaint, rather than the NYCTA alone.

> [8]   Although affiliated with the MTA, the NYCTA is a distinct legal entity with the statutory authority [*25] to sue and be sued in its own name. *See N.Y. Pub. Auth. Law § 1204(1)*. The MTA's functions are limited to financing and planning, while the NYCTA is in charge of operations, maintenance, and control of transportation facilities. *Delacruz v. Metropolitan Transp. Authority, 45 A.D.3d 482, 846 N.Y.S.2d 160, 161 (1st Dep't 2007)*.

NYCTA is a public benefit corporation created by the state of New York for the purpose of operating transit facilities. *N.Y. Pub. Auth. L. § 1201 et seq*. MABSTOA is a public benefit corporation that provides bus service and is a subsidiary of the NYCTA. *N.Y. Pub. Auth. L. § 1203-a(2)*.

Parent corporations may, however, be named under certain circumstances in employment discrimination actions brought against their subsidiaries. A parent may be considered the employer of a subsidiary's employees for Title VII purposes if the two companies share "(1) interrelation of operations, (2) centralized control of labor

2009 U.S. Dist. LEXIS 39252, *25

relations, (3) common management, and (4) common ownership or financial control." *Gulino v. New York State Educ. Dept., 460 F.3d 361, 378 (2d Cir. 2006)* (citation omitted). The "centralized control of labor relations" element is especially important, and includes "tasks such [*26] as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions." *Parker v. Columbia Pictures Industries, 204 F.3d 326, 341 (2d Cir. 2000)*.

The determination of whether a parent and a subsidiary may be treated as a single employer is ordinarily a question of fact inappropriate for resolution at this stage of the litigation. *Lihli Fashions Corp., Inc. v. N.L.R.B., 80 F.3d 743, 747 (2d Cir. 1996)*.

The amended complaint does not distinguish between employees of the various transit authorities, and defendants do not explain why as a matter of law they may not be considered as a single employer. [9] Given the fact-intensive nature of the single employer inquiry, and in the absence of any argument from defendants that plaintiff has not alleged that the various entities acted as a single employer, NYCTA will remain in the lawsuit as a defendant. Plaintiff will be given leave to amend the complaint to remove the MTA and correct its misidentification of the NYCTA as the "MTANYC."

9   Second Circuit authority exists for treating the MABSTOA and NYCTA as defendants collectively, where plaintiff was employed by MABSTOA. *See Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 77 n.4 (2d Cir. 2003)*.

CONCLUSION

The [*27] February 3, 2009 motion of the defendants to dismiss is granted in part. All claims against the MTA, all Title VII and ADEA claims, and the request for punitive damages are dismissed with prejudice. Morrow may replead solely his *§ 1981* claim against MABSTOA and the NYCTA. If he wishes to amend, he must do so by June 5, 2009.

SO ORDERED:

Dated: New York, New York

May 8, 2009

/s/ Denise Cote

DENISE COTE

United States District Judge



**PHILLIS LU SIMPSON, Plaintiff, -against- CITY OF NEW YORK DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, SHAUN DONOVAN, DEBORAH RAND, Defendants.**

**08 Civ. 0185 (SHS)(KNF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2009 U.S. Dist. LEXIS 58766*

**April 13, 2009, Decided**

**COUNSEL:** [*1] Phillis Lu Simpson, Plaintiff, Pro se, New York, NY.

For City of New York Department of Housing Preservation and Development, ("HPD"), Shaun Donovan, Deborah Rand, Defendants: Christopher Lee Heer, LEAD ATTORNEY, NYC Law Department, New York, NY; Donna Anne Canfield, LEAD ATTORNEY, New York City Law Department, New York, NY.

For Luiz Aragon, Defendant: Donna Anne Canfield, LEAD ATTORNEY, New York City Law Department, New York, NY.

**JUDGES:** KEVIN NATHANIEL FOX, UNITED STATES MAGISTRATE JUDGE. THE HONORABLE SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** KEVIN NATHANIEL FOX

**OPINION**

**REPORT AND RECOMMENDATION**

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE

**INTRODUCTION**

Phillis Lu Simpson ("Simpson") brings this action against the City of New York Department of Housing Preservation and Development ("DHPD"), Shaun Donovan ("Donovan"), and Deborah Rand ("Rand"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. §§ 2000e-2000e-17* ("Title VII"), the Age Discrimination in Employment Act of 1967, *29 U.S.C. §§ 621-634* ("ADEA"), the New York State Human Rights Law, *New York Executive Law §§ 290-297* ("NYSHRL"), and the New York City [*2] Human Rights Law, *New York City Administrative Code §§ 8-101-131* ("NYCHRL"). The plaintiff alleges employment discrimination based on race, age, color and religion, and contends the defendants retaliated against her. Before the Court is the defendants' motion for summary judgment, made pursuant to *Fed. R. Civ. P. 56.* The plaintiff opposes the motion, through an affirmation and "memorandum of law." [1]

1    The Court notes that Simpson's "memorandum of law" is devoid of citations to any case law.

**BACKGROUND**

The following facts are undisputed:

Simpson was hired as a per diem attorney for DHPD, in October 2002, and, in July 2003, assumed the permanent position of Agency Attorney, Level III. In January 2004, the plaintiff was made supervising attorney for DHPD's anti-harassment unit; she remained with this unit from January 2004, until September 2006. On April 27, 2005, Simpson sent an e-mail message to Rand, DHPD Assistant Commissioner, Office of Preservation Services, requesting a promotion to Agency Attorney, Level IV, and an increase in salary to the maximum amount for that position. At her deposition, Simpson testified that, in response to her promotion request, Rand became angry with her, [*3] and this anger constituted discrimination. Simpson also testified that Rand denied her promotion request and this denial constituted race, age and gender discrimination, although Simpson was unaware of any employee who requested and received a raise from Rand. On April 29, 2005, Simpson sent an e-mail message to Matthew Shafit, DHPD General Counsel, and Rand apologizing for her promotion request. On May 16, 2005, Simpson filed an internal complaint of discrimination with DHPD's Equal Employment Opportunity Office ("EEO"), alleging she had been discriminated against, based upon her age, color, race and gender.

On August 15, 2005, Simpson entered into a Mediation Settlement Agreement ("the Agreement"), which resolved the issues raised in her EEO complaint. The Agreement's text reveals that Simpson agreed to: (1) withdraw her claims of discrimination arising between April and August 2005; and (2) refrain from instituting a lawsuit "in any court" based upon the alleged discriminatory acts that occurred between April and August 2005. In exchange, DHPD agreed to: (1) promote Simpson to the "office title of Director/Attorney-In-Charge of the Anti-Harassment Unit with an annual salary of $ [*4] 75,000 on her civil service line, Attorney Level III," and noted that this was both a promotion and salary increase; and (2) place Simpson within the Operations Division of the Office of Legal Affairs, and not place her "under the direct supervisory structure of the Deputy General Counsel for Litigation." At her deposition, Simpson testified that: (1) in April 2006, the Agreement was violated, because she was placed under the direct supervision of Rand; (2) in April 2006, she was not required to report directly to Rand, rather, she reported to Steve Meachem; and (3) at

an unspecified time, Luiz Aragon ("Aragon"), DHPD Deputy Commissioner, Office of Preservation Services, required Simpson to report to Rand indirectly. Simpson also testified that Rand sent an e-mail message to her once, and the message constituted a violation of the Agreement. During the 2006 calendar year, while Simpson was employed as a supervising attorney in DHPD's anti-harassment unit, the New York City Office of Administrative Trials and Hearings ("OATH"), before whom Simpson and the attorneys she supervised litigated, disagreed with the position(s) advocated by Simpson, and her staff, in all but one case.

On July [*5] 7, 2006, Simpson filed a second complaint with EEO, alleging she was retaliated against, for filing her May 2005 EEO complaint, when Aragon met with Simpson and informed her he "was not going to support [her] in terms of better staff," and assigned more tasks for Simpson to complete. Simpson amended her second EEO complaint in August 2006, adding claims that Shaun Donovan, DHPD Commissioner, Aragon, Rand and Neil Coleman, DHPD Assistant Commissioner, Communications, retaliated against her by attempting to transfer Simpson to the Section 8 unit of the agency, and "by providing or allowing false information to be reported against [her] in the newspaper known as the Village Voice." [2]

> 2   Simpson provided a copy of the article appearing in the "Village Voice." The article identifies Mark Hersh as "one of the city's worst landlords." Hersh's lawyer is quoted as saying that Rand "was 'a governmental bully, who deserves to be arrested,'" and that Rand was not the only "corrupt" official, but was part of a citywide conspiracy. Hersh's attorney represented that some DHPD officials supported granting a no-harassment certificate to Hersh. The article notes that a memorandum to Rand, written by Elizabeth [*6] Bolden, an assistant commissioner of DHPD's housing litigation division, supported granting such a certificate, and Bolden "made her recommendation based on a memo written by [DHPD's] attorney in charge of the . . . Anti-Harassment Unit, Phyllis Simpson, and 'other sources.'" The article states that Simpson's memorandum represented "that the state's Department of Housing and Community Renewal and [D]HPD's own SRO Compliance Unit 'had no information regarding harassment at the

premises.'"

In September 2006, DHPD's anti-harassment unit was divided into a "review" unit and a "litigation" unit. On September 26, 2006, Simpson was assigned to the review unit; her litigation duties were assigned to an attorney in the litigation unit. At her deposition, Simpson testified that Donovan and Aragon discriminated and retaliated against her, on the basis of her age, by assigning her to the review unit, since the litigation unit was staffed by "younger, white, female attorneys." However, Simpson also stated she did not know the identities or ages of the attorneys assigned to the litigation unit, and did not know how many attorneys were assigned to that unit.

The plaintiff contends that, if she were [*7] Jewish, Rand's attitude toward her would have been different. Simpson testified, at her deposition, that Rand treated other employees differently, based upon their religion, as she required individuals to work on "their religious days," though Simpson refused to name, or otherwise identify, these individuals or whether they had requested "the day off for religious observance." Rand never denied Simpson the opportunity to take leave, on account of her religion; and Simpson does not allege either Donovan or Aragon discriminated against her, based upon her religion.

The date on which Simpson filed a charge of discrimination ("charge") with the United States Equal Employment Opportunity Commission ("EEOC") is disputed by the parties. The defendants have provided a copy of a charge, completed by Simpson, dated September 25, 2007. In this charge, Simpson alleges she was discriminated against, based upon her race, color, sex and age, and was retaliated against. In addition to the allegations described above, Simpson also noted that, on or about September 18, 2007, her supervisor, "Mr. Vance," advised her that "no employee under Mr. Aragon would be permitted to sign in for work before 8:00 [*8] a.m.," and that Simpson believed she was receiving disparate treatment, since "several employees outside of [her] unit who are under Mr. Aragon . . . ha[d] not been told that they could not sign in before 8:00 a.m. and they still come in at 7:30 a.m. and sign in at that time." [3] Simpson also noted that, when she was transferred to the "review unit" in September 2006, her "work related communication with [her] former staff" was "cut off," and she was "forbidden to speak with other lawyers and . .

. . d[id] not have access to a Law Library as d[id] other attorneys on [her] job." Simpson received an EEOC Right to Sue letter, on or about November 27, 2007.

> 3    Simpson attached time sheets to her "memorandum of law" in opposition to the defendants' summary judgment motion, which record Simpson's arrival and departure from work, in one-week increments. The time sheets indicate Simpson was on "Flex Time": "8:00 AM - 10:00 AM." Simpson submitted six time sheets, for several weeks in 2007, which show Simpson's time of arrival ranged from 7:15 a.m. to 8:45 a.m.; the four 2008 time-sheets submitted show Simpson's time of arrival ranged from 8:00 a.m. to 9:00 a.m.

Simpson maintains that her "claims were [*9] originally filed with the EEOC on June 11, 2007." In support of that contention, Simpson attached to her affidavit in opposition to the defendants' motion, a copy of an EEOC Intake Questionnaire, dated June 11, 2007. In this document, Simpson provides: (1) names, addresses, telephone numbers and other identifying information for herself and DHPD; (2) information about her employment, including her start date, salary and the DHPD position titles she has held; and (3) the bases for her employment discrimination claims. Simpson provided the following about her claims of discrimination: (i) in April 2005, she was "told basically that [she] should not ask for [a] raise" and that doing so had made her supervisor angry; (2) from April 28, 2006, to the "present," she was "retaliated [against] because [she] filed [an] EEO complaint by [sic] [her] job responsibilities being taken away"; and (3) the claims raised are in the "Amendment to July 7, 2006 Retaliation complaint," a copy of which was attached to the intake questionnaire. Nothing in the record indicates Simpson provided an affidavit with her questionnaire. The EEOC questionnaire states: "Remember, a charge of employment discrimination [*10] must be filed within the time limits imposed by law" and "[u]pon receipt, this form will be reviewed to determine EEOC coverage" (emphasis omitted). Simpson also submitted a letter from the EEOC, dated January 22, 2007, which states: (1) "to begin the charge-filing process, please read and complete the entire questionnaire immediately and return it by mail to the field office"; (2) "[a] charge of discrimination must be filed with the EEOC within 180 days from the date of harm in order to protect your rights" and that this

deadline "may be extended to 300 days if the charge is also covered by a state or local job discrimination law"; and (3) "[g]enerally, submission of this questionnaire will not meet all requirements for filing a charge," and that "this questionnaire will allow the EEOC to review your circumstances further and determine whether we can assist you."

In response to Simpson's questionnaire, the EEOC sent a letter to her, dated July 18, 2007, advising Simpson her claims were untimely and would not be investigated by the EEOC. The letter explained that, "a charge of employment discrimination must be filed with the EEOC within 300 days of your notification of the alleged discriminatory [*11] act," yet, the most recent discriminatory act discussed in the questionnaire was on "July 5, 2006." Simpson's questionnaire was received by the EEOC on June 15, 2007.

## DISCUSSION

### Standard of Review for Summary Judgment

Summary judgment may be granted in favor of the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See *Fed. R. Civ. P. 56(c)*; see also *D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)*, cert. denied, *524 U.S. 911, 118 S. Ct. 2075, 141 L. Ed. 2d 151 (1998)*. When considering a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L. B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998)* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 [1986])*.

The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)*. [*12] "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law . . . .' An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202*

*[1986])*. Once the moving party has satisfied its burden, the non-moving party must come forward with "specific facts showing a genuine issue for trial." *Fed. R. Civ. P. 56(e)(2)*.

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." *Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356*. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510* (emphasis omitted). The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id. at 256, 106 S. Ct. at 2514*. [*13] Summary judgment should only be granted if no rational jury could find in favor of the non-moving party. See *Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 721 (2d Cir. 1994)*.

The defendants contend they are entitled to summary judgment because: (1) the court lacks subject matter jurisdiction over Simpson's religious discrimination claim, because she did not raise this claim in her EEOC charge; (2) Simpson's Title VII and ADEA claims accruing prior to November 29, 2006, are time-barred, because they accrued more than 300 days before the charge was filed; (3) Simpson cannot establish a prima facie case of race, color, gender or age discrimination; (4) Simpson cannot establish a prima facie case of retaliation, because she has not demonstrated a casual connection between the protected activity of complaining to EEO and the reorganization of DHPD's harassment unit; and (5) the defendants had legitimate, nondiscriminatory, reasons for their actions, and Simpson cannot show that these reasons were pretextual.

### Subject Matter Jurisdiction

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC [*14] charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)*; see also *Miller v. Int'l Telephone and Telegraph Corp., 755 F.2d 20, 23 (2d Cir. 1985)* ("[n]o action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC, i.e., within the permissible time limit for filing

the claim with the EEOC"); *Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003)* ("the administrative exhaustion requirement is the same under the ADEA as it is under Title VII, [and the "reasonably related"] . . . exception [] also appl[ies] to claims brought pursuant to the ADEA"). "This exhaustion requirement is an essential element of Title VII's statutory scheme." *Butts, 990 F.2d at 1401;* see also *Holowecki v. Fed. Express Corp., 440 F.3d 558, 567 (2d Cir. 2006)* (finding that "administrative exhaustion is an important aspect of ADEA"). Although it has been found that claims not raised in an EEOC charge may be "reasonably related" to the allegations in the charge so as to permit their inclusion in a federal civil action, see *Butts, 990 F.2d at 1402-03,* [*15] "[t]he courts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge," *Peterson v. Ins. Co. of N. Am., 884 F. Supp. 107, 109 (S.D.N.Y. 1995).*

In the case at bar, Simpson's EEOC filings alleged claims of discrimination based on race, color, sex, age and retaliation; neither the charge nor her EEOC intake questionnaire asserts a claim of discrimination based on her religion. Simpson's religion discrimination claims, are unexhausted.

*Statute of Limitations*

In a state such as New York, which maintains an administrative agency to receive and adjudicate claims of unlawful discrimination, a person alleging employment discrimination under Title VII or ADEA is obligated to file a charge of discrimination with the EEOC within 300 days after the alleged discriminatory act took place. See *Pikulin v. The City Univ. of New York, 176 F.3d 598, 599 (2d Cir. 1999)* (Title VII); *Miller, 755 F.2d at 23* (ADEA). In like manner, a claim of retaliation must also be filed with the EEOC no later than 300 days after an alleged retaliatory act occurs. See *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14, 122 S. Ct. 2061, 2072-73, 153 L. Ed. 2d 106 (2002).*

The [*16] defendants contend the plaintiff filed a charge of discrimination on September 25, 2007, and, therefore, any claims arising before November 29, 2006, or 300 days prior to the filing of the charge, are time-barred. Simpson maintains that her "claims were originally filed with the EEOC on June 11, 2007," and that the "conduct of defendants is on-going, continuous and has created a hostile work environment for plaintiff." In support of this assertion, the plaintiff contends: (1) the

EEO officer led the plaintiff to believe, "[a]s late as January 2007," her "claims were being resolved by the City Deputy Mayor"; (2) in October 2007, she complained "to the Mayor [by letter] regarding the hostile environment wherein [she] was working"; (3) in September 2007, "defendants changed the time when plaintiff could report to work, i.e., plaintiff is no longer permitted to begin work at 7:30," which she "viewed . . . as further reprisal"; and (4) the August 15, 2005 Agreement "should have tolled the statute [of limitations] not only because it is a contract, but because it violated *29 U.S.C. § 626(f) et seq."*

The parties disagree about the date on which Simpson filed a charge of discrimination with [*17] the EEOC. Simpson alleges that her June 11, 2007 EEOC intake questionnaire constituted the filing of her charge, while the defendants allege that Simpson filed a charge with the EEOC, on September 25, 2007.

The required content for a charge "is minimal" and "a charge 'is sufficient' when the EEOC receives 'a . . . writing' . . . from the person making the charge that names the employer and generally describes the allegedly discriminatory acts." *Holowecki, 440 F.3d at 566* (citing *29 C.F.R. §§ 1626.3, 1626.6, 1626.8).* "[A] writing submitted to the EEOC containing the information required by EEOC interpreting regulations is an EEOC 'charge' for purposes of *Section 626,* only when the writing demonstrates that an individual seeks to activate the administrative investigatory and conciliatory process." *Id. at 566-67.* The Second Circuit Court of Appeals has found that an "EEOC Intake Questionnaire and accompanying affidavit" evidence an intent to "activate the administrative process" when they possess the following characteristics: (1) a "forceful tone and content [in] the affidavit" submitted; (2) "the 'consent' box on the questionnaire form [is "checked"]," to allow disclosure of one's identity [*18] to the alleged discriminating employer; and (3) an unambiguous request that an employer's discriminatory practices come to an end. *Id. at 568-69.*

Simpson's EEOC intake questionnaire contains the "minimal" information required by EEOC interpreting regulations. See *Holowecki, 440 F.3d at 566* (citing *29 C.F.R. §§ 1626.3, 1626.6, 1626.8).* In analyzing Simpson's intent to "activate the administrative process," the Court notes that, unlike the circumstance in *Holowecki,* where an affidavit accompanied the plaintiff's

EEOC intake questionnaire, the record here contains only Simpson's questionnaire and the amendment attached to it; nothing in the record before the Court indicates an affidavit in support of Simpson's questionnaire exists. Accordingly, in the case at bar, no assessment of the tone and content of such a document can be made. In addition, a "consent box" does not appear on Simpson's questionnaire, and there is no indication that she would consent to the EEOC's disclosure of her identity to her employer. Moreover, Simpson's questionnaire lacks an unambiguous request that DHPD cease its alleged discriminatory practices. Additionally, the EEOC's letter and intake questionnaire explain [*19] that a charge must be filed, the questionnaire generally does not meet the requirements for filing a charge, and a 300-day statute of limitations for filing a charge exists. The instant case is distinguishable from *Holowecki*, as no evidence exists of an intent by Simpson to "activate" the EEOC's administrative process by filing her intake questionnaire, and the EEOC provided information to Simpson informing her of the need to file a charge timely. Simpson's intake questionnaire is insufficient to constitute a "charge" and, therefore, the statute of limitation, on her claims, runs from September 25, 2007, the date Simpson filed a charge of discrimination with the EEOC.

"Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993)*; see also *Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997)* (noting that the continuing violation [*20] exception applies to both Title VII and ADEA cases). However, in this case, the plaintiff's reliance on the "continuing violation theory," is misplaced. Discrete acts, such as a failure to promote or a denial of transfer, alleged to be discriminatory, constitute separate actionable unlawful employment practices. See *Nat'l R.R. Passenger Corp., 536 U.S. at 114, 122 S. Ct. at 2073*. Consequently, a plaintiff like Simpson, alleging failure to promote, retaliation, and "transfer" to the review division of DHPD's harassment unit, "can only file a charge [of discrimination] to cover discrete acts that 'occurred' within the appropriate time period." *Id. at 114, 122 S. Ct. at 2073*. Recovery is precluded "'for discrete acts of

discrimination or retaliation that occur outside the statutory time period,' even if other acts of discrimination occurred within the statutory time period." *Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)* (emphasis omitted) (quoting *Nat'l R.R. Passenger Corp., 536 U.S. at 105, 122 S.Ct. at 2061*).

Since the plaintiff filed her charge of discrimination on September 25, 2007, any claims arising before November 29, 2006, or 300 days prior to the filing of the [*21] charge, are time-barred. See *Nat'l R.R. Passenger Corp., 536 U.S. at 113-14, 122 S. Ct. at 2072-73*; *Pikulin, 176 F.3d at 599*. Therefore, the Court finds that the following claims are time-barred: (1) Simpson's failure to promote claim, which includes the plaintiff's April 27, 2005 promotion request, her May 16, 2005 EEO complaint requesting a promotion and raise, and the August 15, 2005 Settlement providing her a promotion and raise; (2) Simpson's retaliation claim, as asserted in her July 6, 2006 EEO complaint and the August 2, 2006 amendment to her July 2006 complaint; (3) the violation of the August 2005 settlement agreement alleged to have occurred in April 2006 (4) any claims arising from DHPD's division of the harassment unit, and Simpson's assignment to the harassment unit's "review division," on September 26, 2006; and (5) the plaintiff's claims that she was informed, in September 2006, not to speak with co-workers, use the law library, or participate in meetings, workshops and seminars.

The plaintiff's assertion, that her claims are not time-barred because: (1) in January 2007, she believed her claims were being resolved; and (2) in October 2007, she wrote a letter to the Mayor [*22] regarding her work environment, are meritless. Simpson's belief and letter are not incidents of discrimination by her employer in furtherance of an ongoing discriminatory policy. See *Lambert, 10 F.3d at 53* (providing that, when an EEOC charge is timely filed regarding "any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone"). Simpson's argument, that the August 15, 2005 Agreement should have tolled the limitations period, because the Agreement violated *29 U.S.C. § 626(f) et seq.*, also fails. Simpson neither identifies the terms of the Agreement that violate this statute, nor suggests that the statute was violated after the Agreement was executed. Moreover, Simpson does not allege the violation constituted an act of discrimination perpetrated

against her. Furthermore, Simpson does not provide any authority supporting her proposition that a settlement agreement, which violates federal law, tolls the 300-day limitations period. To the extent Simpson is alleging that implementation of the Agreement constitutes an ongoing violation of *29 U.S.C. § 626(f)* [*23] and would allow her to invoke the "continuing violation" exception to the limitations period, she is wrong. This is so because Simpson does not contend the implementation of the Agreement, which allegedly violates *29 U.S.C. § 626(f)*, was an "incident of discrimination in furtherance of an ongoing policy of discrimination." *Lambert, 10 F.3d at 53.*

The Court finds that Simpson's claim, that in September 2007 the "defendants changed the time when plaintiff could report to work, i.e., [she] is no longer permitted to begin work at 7:30," which Simpson "viewed . . . as further reprisal," is not time-barred, as Simpson's charge is filed within 300 days of the alteration to her work schedule.

*Prima Facie Case of Discrimination*

In order to survive a motion for summary judgment, a Title VII plaintiff must, in the first instance, establish a prima facie case of discrimination by showing: (1) she is a member of a protected class; (2) she is qualified to perform the job in question; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. See *Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005)* (citations [*24] omitted). If the plaintiff establishes her prima facie case, a presumption of discrimination arises and the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason(s) for the adverse action. See *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000).* If the defendant provides such a reason(s), the presumption of discrimination created by the prima facie case is rebutted, and the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the legitimate reason(s) offered by the defendant is a pretext for discrimination. See *Dawson, 398 F.3d at 216.* This analysis is also applicable to NYSHRL and NYCHRL claims. *Id. at 217.*

In order for Simpson's claim, that the change in her work schedule was a "further reprisal" against her for challenging discriminatory conduct by her employer, to withstand the defendants' summary judgment motion, the plaintiff must show, inter alia, the changed schedule constituted an "adverse employment decision or action." See *Dawson, 398 F.3d at 216.* "A plaintiff sustains an adverse employment action if . . . she endures a 'materially adverse change' in the terms and conditions [*25] of employment." *Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).* A "materially adverse change" is one that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quotations and citation omitted). Examples of a materially adverse change include: "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quotations and citations omitted).

Simpson alleges she was discriminated against when the defendants required that her workday begin no earlier than 8:00 a.m., despite Simpson's record of beginning her workday at 7:30 a.m. "Typically, . . . shift changes without a loss of pay or other material changes in working conditions do not constitute an adverse employment action." *Booker v. Fed. Reserve Bank of New York, Nos. 01 Civ. 2290, 01 Civ. 2291, 2003 WL 1213148, at *11, 2003 U.S. Dist. LEXIS 3955, at *31 (S.D.N.Y. March 17, 2003).* In the case at bar, Simpson was informed that her workday must begin one half hour later than the time [*26] at which she had become accustomed to beginning her workday. The change in Simpson's workday start time had no impact on her salary or her other material work conditions. Consequently, the Court finds that the change in Simpson's work schedule did not constitute a "'materially adverse change' in the terms and conditions of [her] employment." *Galabya, 202 F.3d at 640*; see also *Booker, 2003 WL 1213148, at *11, 2003 U.S. Dist. LEXIS 3955, at *31.*

*Supplemental Jurisdiction*

The remaining claims asserted by Simpson are based on alleged violations, by the defendants, of NYSHRL and NYCHRL. The court may, in its discretion, exercise supplemental jurisdiction over these claims. See *28 U.S.C. § 1367(a).* A court has broad discretion to decide whether to exercise its supplemental jurisdiction over state- and city-law claims. See *United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-27, 86 S. Ct. 1130,*

*1139-40, 16 L. Ed. 2d 218 (1966); Seabrook v. Jacobson, 153 F.3d 70, 73 (2d Cir. 1998).* A court may decline to exercise supplemental jurisdiction over such claims if the court "has dismissed all claims over which it has original jurisdiction." *28 U.S.C. § 1367(c)(3).* Since dismissing the federal claims asserted [*27] in this action appears warranted, it would be reasonable and appropriate for the court to decline to exercise its supplemental jurisdiction authority with respect to the plaintiff's remaining claims.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that the defendants' motion for summary judgment, pursuant to *Fed. R. Civ. P. 56,* Docket Entry No. 23, be granted, with respect to the plaintiff's Title VII and ADEA claims. I recommend further that the court decline to exercise its supplemental jurisdiction over the plaintiff's state- and city-law claims.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to *28 U.S.C. § 636(b)(1)* and *Rule 72(b) of the Federal Rules of Civil Procedure,* the parties shall have ten (10) days from service of this Report to file written objections. See also *Fed. R. Civ. P. 6.* Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for [*28] filing objections must be directed to Judge Stein. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See *Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).*

Dated: New York, New York:

April 13, 2009

Respectfully submitted:

KEVIN NATHANIEL FOX

UNITED STATES MAGISTRATE JUDGE



JULIA W. SHERMAN, Plaintiff, -against- NEW YORK PUBLIC LIBRARY, Defendant.

CV-07-0679 (SJF)(LB)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2008 U.S. Dist. LEXIS 36453*

April 30, 2008, Decided
April 30, 2008, Filed

**COUNSEL:** [*1] Julia W. Sherman, Plaintiff, Pro se, Brooklyn, NY.

New York Public Library, Defendant: Michael J. Lebowich, Nathaniel M. Glasser, LEAD ATTORNEYS, Proskauer Rose LLP, New York, NY.

**JUDGES:** SANDRA J. FEUERSTEIN, United States District Judge.

**OPINION BY:** SANDRA J. FEUERSTEIN

**OPINION**

**OPINION & ORDER**

FEUERSTEIN, J.

On February 8 2007, *pro se* plaintiff Julia W. Sherman ("Plaintiff") commenced this employment discrimination action against defendant New York Public Library ("Defendant") alleging claims under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e, et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, *29 U.S.C. § 621, et seq.* ("ADEA"). Defendant now moves pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for partial dismissal of the complaint. For the reasons set forth herein,

defendant's motion is granted.

I. Background [1]

> 1  As is required on a motion pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, the factual allegations in the complaint, though disputed by defendant, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiffs. They do not constitute findings of fact by this court.

A. [*2] Factual Background

Plaintiff is a "Black woman from Africa," who is currently sixty-nine (69) years old. (Complaint [Compl.], 7). Plaintiff was employed with defendant from July 10, 1995 until August 19, 2005, which, according to plaintiff, was her "official date of retirement after being in the employ of [defendant] for ten years." ("Particulars to Attachment" of Complaint [Compl. Attach.], p. 1). According to plaintiff, she worked at several different branches of defendant, including the St. Agnes Branch, where she worked from July 14, 2004 until the date of her retirement. (Id.).

Plaintiff alleges that some time prior to February 14, 2005, she was reprimanded by Joan Jankell, her

supervisor at the St. Agnes Branch, in violation of "Article XXVI-- Personnel Data, Section 7," which allegedly provides that "a Staff member shall not be reprimanded except in private." (Compl. Attach., pp. 1-2). Plaintiff alleges that on February 14, 2005, she met with Jankell, Amelia Schwartz, defendant's Supervisor of the West District and Bonnie Birman, to complain about the differential treatment she was receiving. (Compl. Attach. p. 2; see also plaintiff's memorandum entitled "Meeting with Ms. B. Birman, [*3] A. Schwartz and J Jankell Monday, February 14, 2005" attached to Compl. [Plf. Mem.] detailing the purported harassment of plaintiff by Jankell). According to plaintiff, following that meeting, Birman informed her that she would not receive an increase in salary notwithstanding that all of the other librarians' salaries were increased. (Compl. Attach., p. 2).

Plaintiff further alleges that on April 12, 2005, she grieved a violation "of the Local 1930/NYPL contract-- Article XI 'Leave Regulations' Section 4 by Ms. Bonnie Birman." (Compl., p. 7). Plaintiff alleges that a hearing on that grievance was never scheduled. (Id.). Plaintiff also alleges that she was treated differently insofar as she was denied a promotion and transferred "for no reason." (Id.). According to plaintiff, as a result of the disparate treatment, she retired at a lower salary than that of a Senior Librarian. (Id.).

Plaintiff alleges that on June 16, 2005, she filed a complaint of discrimination and harassment with Jennifer Z. Lloyd, defendant's Labor Relations Administrator. (Compl., p. 7).

Plaintiff alleges that Jennifer Levesque, the Benefits Administrator for defendant, assisted her in filing for her retirements [*4] benefits in or around September 2005 and thereafter. (Compl., "Particulars as Attachment" to Complaint", [Compl. Attach.] p. 1). According to plaintiff, she never received her "Lump Sum" retirement benefit, which plaintiff describes as "a bonus giving [sic] to all Vested employees on retirement." (Id.). In addition, plaintiff alleges that her pension "was affected" because Ms. Levesque "omitt[ed] the names of other employers" of plaintiff in documents she sent to Albany. (Id.). Plaintiff further alleges that although Levesque informed her that her premium for health insurance benefits would be paid by defendant, she was informed by Jill Mongelluzzo that she must contribute to the premium. (Id.).

B. Procedural History

On May 13, 2006, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) against Birman, Priscilla Southon and the New York Public Library, alleging discrimination based on race, national origin and age and retaliation. (Compl., P 10). Specifically, plaintiff alleged that after she received an MS degree in Library and Information Science from Pratt Institute in 1999, she was treated differently insofar as she was denied promotions, training opportunities [*5] and salary increases "until after two years" and her name did not appear in the Staff News. (EEOC Charge). Plaintiff attached to the EEOC charge the same "Particulars as Attachment" that she annexed to the complaint in this case.

On February 8 2007, plaintiff commenced this action against defendant under Title VII and the ADEA, alleging that on February 14, 2005 and April 12, 2005 and "so many other dates that are not on my [illegible]," defendant denied her promotions and raises, suspended her without pay for five (5) days, harassed her, violated certain contractual provisions relating to "Leave Regulations" and how to reprimand a staff member and retaliated against her on the basis of her race and national origin. (Compl., PP 4-5, 8). In addition, plaintiff alleges that she was discriminated against in the processing of her retirement benefits. (Compl., p. 4, P 8) [2]. Plaintiff seeks back pay, a salary increase, the lump sum retirement benefit, and that corrections be made to her retirement documents submitted to Albany, presumably so that her pension can be corrected. (Compl., p. 7).

[2]   Plaintiff also appears to assert, in essence, a constructive discharge claim, insofar as she claims [*6] in her opposition to defendant's motion to dismiss that she "was forced to retire, after 10 years of professional dedicated service with [defendant]," ("Plaintiff's Response to Defendant's Preliminary Statement" [Plf. Opp.], p. 5 P 8), and a hostile work environment claim. (Id. at p. 5). In addition, plaintiff also alleges that defendant retaliated against her by failing to give her a service review for the year 2004-2005. (Plaintiff's "Summary", p. 2).

The EEOC issued a right to sue letter on November 21, 2006.

Defendant now moves for partial dismissal of the

complaint pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure.*

## II. Discussion

### A. Standard of Review

In *Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)*, the Supreme Court rejected the previous standard that a motion made pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." The Court replaced the "no set of facts" language with the requirement that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on [*7] its face." *Id. at 1974.* The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).* A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic, 127 S.Ct. at 1959.* Accordingly, the applicable standard on a motion to dismiss pursuant to *Rule 12(b)(6)* requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. *Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007).*

Bell Atlantic did not, however, change the requirement that the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff *See Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2nd Cir. 2007); Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007).* Moreover, "an employment [*8] discrimination plaintiff need not plead a prima facie case of discrimination. * * * [T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits." *Kassner, 496 F.3d at 237* (citing *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514-515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).* Thus, the appropriate inquiry on a motion to dismiss in an employment discrimination suit "is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Id. (citing *Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).*

A *pro se* plaintiff's submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" *Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)* (quoting *Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 [1972]).* Indeed, a court must "read the pleadings of apro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)* (quoting *Burgos v. Hopkins, 14 F.3d 787, 790 [2d Cir. 1994]).* Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant [*9] rules of procedural and substantive law. *Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983).*

### B. Exhaustion

Defendant contends that plaintiff's claims regarding Jankell's alleged harassment should be dismissed because they were not included in her EEOC charge and are not reasonably related to the claims asserted therein.

Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing a Title VII or ADEA action in federal court. See, *Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001).* "Administrative exhaustion is an essential element of Title VII's statutory scheme, the purpose of which is to avoid unnecessary judicial action by the federal courts by giving the administrative agency the opportunity to investigate, mediate, and take remedial action." *Canty v. Wackenhut Corrections Corp., 255 F.Supp.2d 113, 116 (E.D.N.Y. 2003)* (internal quotations and citation omitted); see also *Bey v. Welsbach Elec. Corp., No. 01 Civ. 2667, 2001 U.S. Dist. LEXIS 10811, 2001 WL 863419, at * 2 (S.D.N.Y. Jul. 30, 2001)* (accord).

Claims that were not asserted in an EEOC charge may only be pursued in a federal [*10] action under Title VII or the ADEA if they are "reasonably related" to those that were filed with the agency. *Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008)* (per curiam); *Williams v. New York City Housing Authority, 458 F.3d 67, 70 (2d Cir. 2006); Deravin, 335 F.3d at 200.* There are three types of "reasonably related" claims: (1) claims that fall "within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) claims that allege retaliation arising from the filing of an EEOC charge; and (3) claims that allege "further incidents of discrimination carried out in precisely the same manner alleged in the

EEOC charge." *Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402-1403 (2d Cir. 1993)*, superceded la statute on other grounds as stated in *Hawkins v. 1115 Legal Service Care, 163 F.3d 684 (2d Cir. 1998)*. Only the first type of "reasonably related" claims is relevant here.

In determining whether claims "fall within the scope of the EEOC investigation", the focus should be on the factual allegations contained in the EEOC charge itself. *Deravin, 335 F.3d at 201*; see also *Williams, 458 F.3d at 70* [*11] (accord). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Williams, 458 F.3d at 70* (citing *Deravin, 335 F.3d at 202*).

Although plaintiff does not specifically name Jankell in the EEOC charge, she annexed to the charge a "Particulars as Attachment," in which she alleged that Jankell reprimanded her in violation of "Article XXVI--Personnel Data, Section 7" and "treated her so differently" that she requested a meeting with Schwartz and Birman to discuss the disparate treatment. Thus, plaintiff's claims against Jankell arguably fall "within the scope of the EEOC investigation which can reasonably be expected to grow out of plaintiffs charge of discrimination.

C. Timely Filing of EEOC Charge

Defendant contends that plaintiff's claims relating to discrete acts occurring prior to July 22, 2005 are time-barred.

*42 U.S.C. § 2000e-5(e)(1)* provides, in pertinent part, as follows:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful [*12] employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local

agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Similarly, *29 U.S.C. § 626(d)* provides, in pertinent part, as follows:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed--. (1) within 180 days after the alleged unlawful practice occurred; or (2) in a [*13] case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Thus, to sustain a claim for unlawful discrimination under either Title VII or the ADEA in New York, which has an agency with the authority to address charges of discriminatory employment practices, a plaintiff must first file an administrative charge of discrimination with the EEOC within three hundred (300) days of the alleged discriminatory acts. See *Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S.Ct. 2162, 2167, 167 L.Ed.2d 982 (2007)*; *Mudholkar v. Univ. of Rochester, No. 06-4732-cv, 261 Fed. Appx. 320, 2008 U.S. App. LEXIS 1405, 2008 WL 213888, at * 2 (2d Cir. Jan. 25, 2008)* (citing *Butts, 990 F.2d at 1401*); *Flaherty v. Metromail Corp., 235 F.3d 133, 137 n. 1 (2d Cir. 2000)*.

Initially, the ADEA does not define "charge." Plaintiffs formal charge of discrimination was filed on May 13, 2006. Plaintiff contends, however, that her completion of a "Questionnaire to the Commissioner of US EEOC," together with the documents she submitted in support thereof, on April 16, 2006 constitutes the [*14] filing of an administrative charge and, thus, the charging period commenced on June 20, 2006. In her cover letter enclosing the submissions, plaintiff stated "Thank you for looking at my complaint and providing me with the proper guidance necessary." (Letter from Plaintiff to the Commissioner of the U.S. EEOC dated April 16, 2006).

The Supreme Court has recently held that "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Federal Express Corp. v. Holowecki, 128 S.Ct. 1147, 1158, 170 L. Ed. 2d 10 (2008).* In Holowecki, the Supreme Court found that an "Intake Questionnaire" completed by the plaintiff which included the employee's and employer's names, addresses and telephone numbers; an allegation that the plaintiff and other employees had been the victims of "age discrimination;" the number of employees who worked at the facility where she was stationed; and a statement indicating that the plaintiff had not sought the assistance of any government agency regarding the matter, and which was supplemented by a detailed six-age affidavit, [*15] at the end of which the plaintiff asked the agency to force the defendant to end its age discrimination, to be a "charge" sufficient to commence the ADEA's time limits and procedural mechanisms. *Id. at 1159-1160.* In so holding, however, the Supreme Court acknowledged that not every completed Intake Questionnaire should be treated as a charge, absent circumstances "where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required." *Id. at 1159.*

As plaintiff has not provided a copy of the Intake Questionnaire or the documents she submitted to the EEOC, it cannot be ascertained whether those documents could be reasonably construed as a request for the agency to take remedial action. Indeed, the cover letter indicates only that the plaintiff sought guidance from the agency. Accordingly, it is plaintiffs formal charge of discrimination filed on May 13, 2006 that commenced the charging period herein. [3]

3   In any event, even assuming that the Intake Questionnaire constitutes the filing of a "charge," the charging period would have then commenced on June 20, 2006. As will be seen below, all of plaintiffs [*16] claims of discrimination during her active employment with defendant pre-date even that earlier date and, thus, her claims would still be time-barred.

"The EEOC charging period is triggered when a discrete unlawful practice takes place." *Ledbetter, 127 S.Ct. At 2169.* "A discrete retaliatory or discriminatory act occurred on the day that it happened." *Kassner, 496 F.3d at 239* (citing *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).* As plaintiff filed her charge of discrimination with the EEOC on May 13, 2006, her claims relating to discrete acts that occurred prior to July 17, 2005-- specifically her claims relating (1) to the denial of raises in February 2005 and at all times prior to July 17, 2005, (2) to the violation of "Article XXVI-Personnel Data, Section 7" and purported harassment of plaintiff by Jankell prior to February 14, 2005 [4]; (3) to the violation "of the Local 1930/NYPL contract-- Article XI 'Leave Regulations' Section 4 by Ms. Bonnie Birman" in or before April 2005 [5]; (4) to the denial of promotions prior to July 17, 2005; (5) to her suspension without pay for five (5) working days and transfer to Hunts Point Library on [*17] or before April 20, 2004; and (6) to the denial of a service review for the year 2004- 2005-- are time-barred. [6]

4   Significantly, plaintiff does not set forth any acts of harassment by Jankell at any time after February 2005 and, thus, even if not considered discrete acts, the harassment did not continue after the charging period, i.e. the three hundred day period preceding the filing of the EEOC charge.

5   "Article XI--Leave Regulations, Section 4" provides that "[r]easonable lateness due to transportation slow downs, weather conditions or transportation strikes within the City [of New York] shall be regarded as excused time. The staff member shall not be penalized by loss of pay or by overtime as a result of the above conditions." Plaintiff grieved the loss of one (1) day annual leave on January 24, 2005 when she failed to report to work at her assigned branch, the St. Agnes Branch, following a snow storm.

6   For the sake of clarity, plaintiffs claims of

discrimination and retaliation relating to her retirement benefits, pension and health insurance premiums remain.

However, to the extent plaintiffs complaint states a constructive discharge claim, that claim, which does not involve a discrete, [*18] identifiable act on the part of defendant, accrued when plaintiff gave defendant "definite notice of her intention to retire." *Flaherty v. Metromail Corp., 235 F.3d 133, 138 (2d Cir. 2000)*. As plaintiff alleges that she retired on August 19, 2005, which is within the three hundred (300) day charging period, that claim is not time-barred. [7]

> 7   Although all of the discrete acts allegedly committed by defendant during plaintiff's active employment are not actionable as time-barred, plaintiff is not barred from using those prior acts as background evidence in support of her timely constructive discharge claim. See *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)*. I do not address the merits of plaintiff's constructive discharge claim at this time.

Unlike plaintiff's constructive discharge claim, to the extent plaintiff's complaint states a hostile work environment claim, which is "comprised of a series of separate acts that collectively constitute one 'unlawful employment practice,' *Morgan, 536 U.S. at 117, 122 S.Ct. 2061*, that claim is time-barred. Although lilt does not matter, for purposes of [Title VII], that some of the component acts of [*19] the hostile work environment fall outside the statutory time period[,] * * * an act contributing to the claim [must] occur[] within the filing period" for the claim not to be time-barred. *Morgan, 536 U.S. at 117, 122 S.Ct. 2061* (emphasis added). "In order for [a hostile work environment claim] to be timely, the employee need only file a charge within * * * 300 days of any act that *is part of the hostile work environment.*" *Id. at 118, 122 S.Ct. 2061* (emphasis added); see also *Mudholkar, 2008 U.S. App. LEXIS 1405, 2008 WL 213888, at * 2* (affirming the dismissal of the plaintiffs hostile work environment claim as time-barred because he failed to file a charge within 300 days of any act that

was part of the hostile work environment). Although plaintiffs constructive discharge, i.e. retirement, occurred during the charging period, that act is not an act contributing to the hostile work environment. Plaintiff does not state any acts of harassment, hostility or abuse that occurred in the approximate one month period between July 17, 2005 and August 19, 2005, the date of her retirement, which contributed to, or is part of, the purported hostile work environment. Since the constructive discharge claim and plaintiffs [*20] claims relating to her retirement benefits cannot be said to have contributed to the hostile work environment as a matter of law, plaintiffs hostile work environment claim is time-barred.

Accordingly, defendant's motion to dismiss is granted and plaintiffs claims relating to her active employment, all of which involve discrete acts occurring prior to July 17, 2005, and her hostile work environment claim, are dismissed.

III. CONCLUSION

Defendant's motion is granted and plaintiff's Title VII and ADEA claims are dismissed to the extent they are based on discrete acts occurring during plaintiff's active employment prior to July 17, 2005 and a hostile work environment. The parties are directed to appear in my courtroom at 225 Cadman Plaza East, Brooklyn, New York on **June 2, 2008** at **10:00 a.m.** for a settlement and/or scheduling conference with authority or persons with authority to resolve this action. Further, the parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED.

/s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN

United States District Judge

Dated: April 30, 2008

Central Islip, New York



JOHN N. PRICE, Plaintiff, -against- THE CITY OF NEW YORK and THE NEW YORK CITY DEPARTMENT OF CORRECTION, Defendants.

09-CV-4183 (NGG) (LB)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2011 U.S. Dist. LEXIS 67419; 14 Accom. Disabilities Dec. (CCH) P14-220; 24 Am. Disabilities Cas. (BNA) 1430*

June 20, 2011, Decided
June 22, 2011, Filed

**PRIOR HISTORY:** *Price v. City of New York, 2011 U.S. Dist. LEXIS 67421 (E.D.N.Y., Mar. 9, 2011)*

**COUNSEL:** [*1] Mr. John Price, Plaintiff, Pro se, Brooklyn, NY.

For City of New York, New York City Department of Correction, for the actions committed by it Supervisory Staff, Defendants: Courtney B. Stein, Jessica Leigh Waters, LEAD ATTORNEYS, NYC Law Department, New York, NY.

For Joandrea Davis, Warden for the Eric M. Taylor Center (EMTC), Darlene Merritt, Deputy Warden of Administration for EMTC, Ashley Wilson, Captain of Personnel for EMTC, Defendants: Courtney B. Stein, LEAD ATTORNEY, NYC Law Department, New York, NY.

**JUDGES:** NICHOLAS G. GARAUFIS, United States District Judge.

**OPINION BY:** NICHOLAS G. GARAUFIS

**OPINION**

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff John N. Price, pro se, brings this action against the City of New York and the New York City Department of Correction. (3d Am. Compl. ("Compl.") (Docket Entry # 24).) Plaintiff alleges that Defendants discriminated against him in violation of the Americans with Disability Act ("ADA") by failing to reasonably accommodate his disability. (Id.) Plaintiff further alleges that Defendants retaliated against him. (Id.) Defendants move to dismiss pursuant to *Federal Rules of Civil Procedure 12(b)(1)* and *12(b)(6)*. (Docket Entry ##27, 28, 29.) [*2] On November 9, 2010, the court referred Defendants' Motion to Dismiss to Magistrate Judge Lois Bloom for Report and Recommendation ("R&R") pursuant to *Federal Rule of Civil Procedure 72(b)*. On March 9, 2011, Judge Bloom recommended that the court grant Defendants' motion with respect to the retaliation claim, but deny Defendants' motion with respect to the discrimination claim. (R&R (Docket Entry # 40).) The R&R was served on all parties, and objections were due by March 28, 2011. (Id. at 19.)

On March 23, 2011, Defendants objected in part to the R&R, arguing that Plaintiff's claim of discrimination

2011 U.S. Dist. LEXIS 67419, *2; ;
24 Am. Disabilities Cas. (BNA) 1430

should be dismissed. (Def. Objection to R&R (Docket Entry # 41).) Plaintiff has not filed any objection, and the time to do so has passed. As set forth below, Defendants' Motion is granted in part and denied in part. The court assumes familiarity with the facts of this case.

## I. STANDARD OF REVIEW

In reviewing a motion to dismiss, the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences in the plaintiff's favor. See *ATSI Commc'ns, Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007)*. To survive a *Rule 12(b)(6)* motion, a complaint must contain [*3] "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). The complaint must set forth factual allegations that are sufficient "to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*.

Where a plaintiff proceeds pro se, the court reads his or her submissions liberally and interprets them as raising the strongest arguments they suggest. See *McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)*; *Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)*. This is because "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (internal quotation marks omitted). Even a pro se complaint, however, will be dismissed if it does not contain sufficient, plausible factual matter to state a claim. See *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct 1937, 1949, 173 L. Ed. 2d 868 (2009)*.

In reviewing the report and recommendation of a dispositive matter from a magistrate judge, the district court "may adopt those portions of the Report to which no [*4] objections have been made and which are not facially erroneous." *La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000)*: see also *Gesualdi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502 (KAM) (JO), 2010 U.S. Dist. LEXIS 23620, at *3 (E.D.N.Y. Mar. 15, 2010)* ("Where no objection to the Report and Recommendation has been filed, the district court need only satisfy itself that there is no clear error on the face of the record.") (internal quotation marks and citation omitted). The district court reviews de novo "those portions of the report . . . to which objection is made." *28*

*U.S.C. § 636(b)(1)*.

## II. DISCUSSION

### A. Retaliation

Judge Bloom recommended dismissal of Plaintiffs retaliation claim, finding that Plaintiff failed to state facts that establish a causal connection between his protected activity and his claim of retaliation under the ADA. (R&R at 18.) Because no party has objected to this portion of the R&R, the court reviews it for clear error. The court has reviewed the record and Judge Bloom's thorough and well-reasoned R&R for clear error and found none. Therefore, the court adopts this portion of the R&R, and notes that the parties have waived further judicial [*5] review of this issue by failing to object. See *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010)* ("[A] party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue."). Accordingly, the court dismisses Plaintiff's retaliation claim with prejudice.

### B. Discrimination

Defendants object to Judge Bloom's recommendation that the court deny dismissal of Plaintiff's discrimination claim, for two reasons. First, Defendants argue that the claim is time-barred because Plaintiff failed to file a charge with the Equal Employment Opportunity Commission ("EEOC") within the 300-day limitations period. (Def. Objection to R&R at 1-2; Def. Mem. (Docket Entry # 29) at 14-15.) Defendants argue that "plaintiff first filed his EEOC Charge of Discrimination on May 7, 2009, and thus, all ADA claims that accrued prior to July 22, 2008 are time barred." (Def. Objection to R&R at 1-2.) Although Defendants acknowledge that Plaintiff filed an Intake Questionnaire with the EEOC on September 12, 2008--a date that was well-within the 300-day [*6] statute of limitations--they contend that "the Intake Questionnaire was not a charge of discrimination in this instance because it was unsigned and was not served upon the Defendants." (Id. at 2; see also Def. Reply (Docket Entry # 33) at 3-4, Exh. M, N.)

Second, Defendants argue that "plaintiff is not 'disabled' within the meaning of the ADA, and has not alleged a plausible ADA claim." (Def. Objection to R&R

Page 3

2011 U.S. Dist. LEXIS 67419, *6; ;
24 Am. Disabilities Cas. (BNA) 1430

at 3; see also Def. Mem. at 8-12.) Specifically, Defendants contend that "plaintiff has not adequately alleged [the] 'severity, duration, or impact'" of his injuries, and that Plaintiff has made no "allegation from which causation could possibly be inferred." (Def. Objection to R&R at 3.)

The court considers these arguments and reviews the portion of Judge Bloom's report that addresses the discrimination claim de novo.

**1. Plaintiff's Claim Is Not Time-Barred**

Plaintiff's ADA claim is subject to the time limitations set forth in Section 706(e)(1) of the Act. See *42 U.S.C. § 12117(a)* (providing that the procedures set forth in *Section 706* apply to claims arising under the ADA). In accordance with this provision, Plaintiff had 300 days from the time of the alleged unlawful employment practice [*7] to file a charge with the EEOC in New York. See *42 U.S.C. § 2000e-5(e)(l)* (300-day limitations period for filing an EEOC charge applies where the "person aggrieved has initially instituted proceedings with a State . . . agency with authority to grant or seek relief from such practice"); see also *Tewksberry v. Ottaway Newspaper, 192 F.3d 322, 325 (2d Cir. 1999).* [1] This requirement "functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Tewksberry, 192 F.3d at 325* (quoting *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)).*

> [1]   The ADA Amendments Act, which became effective in January 1, 2009, does not apply retroactively. See *Parada v. Banco Indus, de Venezuala C.A., No. 10 Civ. 0883(SHS), 2011 U.S. Dist. LEXIS 14799 , 2011 WL 519295, at *4 n.4 (S.D.N.Y. Feb. 15, 2011)* (collecting cases in which others courts have "uniformly" reached this conclusion). Because Plaintiffs claims arose prior to 2009, the court evaluates them without respect to these amendments.

Here, the EEOC received Plaintiff's charge of discrimination on May 7, 2009. [2] (Stein Decl. Ex. H (Docket Entry # 28-8).) Defendants [*8] argue that any employment action alleged to have occurred more than 300 days before the filing of this charge--relevant here, the alleged denial of Plaintiff's request for a handicapped parking pass in March 2008 (Compl. ¶ 2)--must be

time-barred. The May 2009 charge was not, however, Plaintiff's first contact with the EEOC. In his Opposition to Defendants' Motion to Dismiss, Plaintiff stated that he filed his "discrimination complaint on September 12, 2008." (Pl. Opp. ¶ 1.) In a supplemental declaration to their Reply, Defendants included a copy of the September 12, 2008 document, an Intake Questionnaire that Plaintiff filed with the EEOC. (Stein Supp. Decl. Ex. L ("Intake Questionnaire") (Docket Entry # 32-1 ).) [3] The question for the court is whether this Intake Questionnaire constitutes a "charge." The court concludes that it does.

> [2]   Plaintiff dated the EEOC May 6, 2009, but the EEOC time-stamped the charge the following day. (Stein Decl. Ex. H (Docket Entry # 28-8).) This one-day discrepancy is of no consequence here.
>
> [3]   The Intake Questionnaire references other documents that Plaintiff submitted along with the EEOC form. (See Stein Supp. Decl. Exh. L at Question 5 (Plaintiff wrote "Attached [*9] Documents" and "Please refer" in response to question regarding description of discriminatory action). In their Reply, Defendants note that Plaintiff "attached approximately 45 pages of documents [to the Intake Questionnaire], most of which are attached to the Third Amended Complaint. Only the four-page questionnaire is attached as an exhibit hereto. The additional annexed documents are available to the Court upon request." (Def. Reply at 3, n.4.) Pursuant to the court's request, Defendants have now provided the court and Plaintiff with a complete copy of these attachments, which the court considers as part of the questionnaire. ("Attachments to Intake Questionnaire" (Docket Entry # 42-1).) Because the Intake Questionnaire and attachments are integral to Plaintiff's complaint, the court properly considers them here. See *Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995)*; *Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)*; *Wong v. Health First, Inc., No. 04-cv-10061, 2005 U.S. Dist. LEXIS 14309, 2005 WL 1676705, at *3 (S.D.N.Y. July 19, 2005)* (collecting cases of district court doing the same). Consequently, Defendants' Motion to Dismiss is not converted into a motion [*10] for summary judgment. See *Fed, R. Civ. P. 12(d).*

In *Federal Express Corp. v. Holowecki, 552 U.S.*

2011 U.S. Dist. LEXIS 67419, *10; ;
24 Am. Disabilities Cas. (BNA) 1430

*389, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008)*, the Supreme Court considered whether an EEOC intake questionnaire was a "charge" for the purposes of time limitations in the context of an age discrimination claim. One of the plaintiffs in Holowecki completed an "Intake Questionnaire" that included basic information about herself and her employer, as well as an allegation that she and other employees had been victims of "age discrimination." *Id. at 394*. The plaintiff also attached a detailed six-page signed affidavit describing the alleged discriminatory practices, requesting that the EEOC "'[p]lease force Federal Express to end their age discrimination plan.'" *Id. at 394, 405*. Although the Court held that the EEOC "is not required to treat every completed Intake Questionnaire as a charge," it found that this plaintiff's questionnaire was sufficient. *Id. at 405*. In so doing, the Court held that a determination as to whether a document constitutes a charge must focus on whether an objective observer would reasonably understand the document as an attempt by the filer to "activate [the EEOC's] machinery and procedural mechanisms." [*11] *Id. at 402*. The Court concluded that:

> In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

*Id.* The Holowecki Court further held that this "permissive standard," under which "a wide range of documents might be classified as charges," best comports with the design and purpose of the statutory scheme. *Id.*

> In the administrative context now before us it appears *pro se* filings may be the rule, not the exception. The ADEA, like Title VII, sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process. The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal

document, easy to draft.

*Id. at 402-03* (internal quotations and citations omitted).

The Supreme Court has not spoken on whether this [*12] same test extends to non-ADEA contexts. In Holowecki, the Court cautioned that whether that decision could be applied in cases brought under other statutes that the EEOC enforces (such as the ADA and Title VII) requires "careful and critical examination" of the relevant regulations. *552 U.S. at 393*.

The court has carefully and critically examined 29 C.F.R. § 1601, the regulations that apply to both the ADA and Title VII. This set of regulations bears substantial similarity to the ADEA regulations at issue in Holowecki. See 29 C.F.R. § 1626. The most relevant difference between the ADEA and ADA/Title VII regulations concerns the stated requirements regarding the form of the charge. The ADEA regulations state: "A charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." *29 C.F.R. § 1626.6*. By contrast, the ADA and Title VII regulations require that "[a] charge shall be in writing and signed and shall be verified." *29 C.F.R. § 1601.9*. [4] With this distinction in mind, the court finds the permissive standard announced in *Holowecki* applicable here.

> 4   The [*13] provisions in each set of regulations regarding the form a charge must take are quoted here in their entirety. Whereas the ADA and Title VII regulations require that a charge be made in writing and be signed and verified, the ADEA regulations impose no such requirement. This appears to be the only distinction the regulations make in terms of form in these two contexts.

Decisions of other courts support this same conclusion. The court is aware of no decision within this Circuit that has considered whether the Holowecki standard extends to the ADA. But a number of courts in other jurisdictions have applied this standard in ADA cases. See, e.g., *Steiner v. Prof'l Servs. Industr., Inc., CA. No. 08-723, 2009 U.S. Dist. LEXIS 81829, 2009 WL 2950755 (W.D. Pa. Sept. 9, 2009)*. Similarly, federal courts in this Circuit have frequently applied Holowecki in assessing the timeliness of charges in Title VII cases. See, e.g., *Winston v. Mayfair Care Cntr., Inc.*, No. 09 CV 4792 (ARR)(LB), at *7 n.1 (E.D.N.Y. Mar. 4, 2011)

Page 5

2011 U.S. Dist. LEXIS 67419, *13; ;
24 Am. Disabilities Cas. (BNA) 1430

(unpublished decision and order) (collecting cases and noting that "because the EEOC's regulations setting forth the basic information required of a charge are almost identical under both [the ADEA and Title [*14] VII], federal courts have consistently applied Holowecki in the Title VII context"); *Broich v. Inc. Vill. of Southampton. No. CV-080553 (SJF)(ARL), 2011 U.S. Dist. LEXIS 6954, 2011 WL 284484, *6-7 (E.D.N.Y. Jan. 25, 2011)*; *Morrow v. Metro. Transit Auth., No. 08 Civ. 6123 (DLC), 2009 U.S. Dist. LEXIS 39252, 2009 WL 1286208, *5 n.6 (S.D.N.Y. May 8, 2009)*; *Simpson v. City of N.Y. Dep't of Hous. Pres. & Dev., 08 Civ. 0185 (SHS)(KNF), 2009 U.S. Dist. LEXIS 58766, *16-19 (S.D.N.Y. April 13, 2009)*. These cases are instructive here because, as the same regulations govern both Title VII and the ADA, no distinction in the relevant regulations can counsel for a different result as to ADEA cases.

Accordingly, as both parties in this case acknowledge, *Holwecki* and its reasoning are applicable here. The Court must therefore assess whether (1) Plaintiff provided the EEOC with the information required by the relevant regulations, and (2) whether Plaintiff's Intake Questionnaire "must be reasonably construed as a request for the agency to take remedial action." *552 U.S. at 402*.

*a. Information Required by ADEA Regulations*

Plaintiff's Intake Questionnaire clearly contains the name of the charged party and an allegation of discrimination. (Intake Questionnaire.) [*15] But unlike the ADEA regulations at issue in Holowecki, see *29 C.F.R. §§ 1626.6, 1626.8*, the applicable ADA regulations include an additional requirement that a "charge shall be in writing and signed and shall be verified," *29 C.F.R. § 1601.9*. Defendants argue that Plaintiff's Intake Questionnaire is defective and cannot operate as a charge because he failed to sign it. [5] (Def. Reply at 3.)

> 5   Defendants do not cite to the relevant regulations; rather, they attach portions of the EEOC's Compliance Manual and copies of portions of the agency's website. (Stein Supp. Decl. Exs. M, N (Docket Entries # 32-2, 32-3).) The court notes that *Hohvecki* requires compliance with the regulations, not with EEOC policy expressed elsewhere.

Although Plaintiff failed to complete the signature line in Question 14 of his Intake Questionnaire, his signature appears on many of the pages included as attachments to that document, and Plaintiff references the attached documents within the questionnaire itself. (See Intake Questionnaire at 2 (in answer to Question 5, writing "Attached Documents . . . Please refer").) Furthermore, any technical defect in Plaintiff's September 12, 2008 filing was cured by his subsequent [*16] submission to the EEOC The regulations state that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge" and that "[s]uch amendments . . . will relate back to the date the charge was first received." *29 C.F.R. § 1601.12(b)*. In May 2009, Plaintiff filed a signed and verified charge with the EEOC. Both the September 2008 questionnaire and the May 2009 charge reference the same incidents of alleged discrimination and retaliation, and the EEOC assigned the same charge number to both documents. (Intake Questionnaire (Docket Entry # 32-2) (showing number 520-2008-05069 on September 12, 2008 questionnaire); Stein Decl. Ex. H (Docket Entry # 28-8) (showing same number on May 2009 charge).)

Additionally, to the extent that Plaintiff's filings create any ambiguities, the court must construe them in Plaintiff's favor in order to effectuate the core purposes of the ADA. As the Supreme Court stated in Holowecki:

> Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. Construing ambiguities against the drafter may [*17] be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted.

*552 U.S. at 406*. Accordingly, construing the record in the light most favorable to the Plaintiff, and in accordance with the purpose of the remedial scheme, the court finds that Plaintiff's Intake Questionnaire, as amended by his May 2009 EEOC charge, satisfies the technical requirements of the ADA regulations.

*b. Request for Agency Action*

Defendants' argument that Plaintiff's Intake Questionnaire does not constitute a request for the EEOC

Case 6:11-cv-01248-LEK-DEP   Document 19   Filed 12/09/11   Page 43 of 49

Page 6

2011 U.S. Dist. LEXIS 67419, *17; ;
24 Am. Disabilities Cas. (BNA) 1430

to take remedial action is entirely without merit. Defendants argue that the "fact that the questionnaire was never signed nor served upon the defendants is evidence of the fact that the intake questionnaire was not a request for the EEOC to act." (Def. Objection to R&R at 2.) This argument collapses the two distinct requirements articulated in *Holowecki*.

Whether a plaintiff's intake questionnaire can be reasonably construed as a request for agency action turns on whether it evinces an intent to "activate the administrative process." Like the questionnaire in Holowecki, Plaintiff's September 12, 2008 [*18] Intake Questionnaire satisfies this requirement.

Plaintiff's September 12, 2008 submission included extensive documentation that indicates that he intended to spur the EEOC to action at that time. In addition to providing information about bis employer and alleging a basis for disability discrimination on his Intake Questionnaire (see Docket Entry # 32-1), Plaintiff submitted approximately 45 pages of additional documents (Attachments to Intake Questionnaire (Docket Entry # 42-1)). These documents describe Plaintiff's injuries and identify treatment that he alleges is discriminatory and retaliatory. They include significant correspondence between Plaintiff and Defendants about the allegations of discrimination and retaliation, including multiple emails and letters from Plaintiff to his supervisors, responses to these communications, interdepartmental memoranda about Plaintiff's requests, and copies of internal complaints filed by and against Plaintiff. (See Attachments to Intake Questionnaire.) On both the questionnaire itself and in the attachments, Plaintiff's tone is forceful and direct, and he demands remedies for treatment he perceives as violative of the ADA. [6] (Intake Questionnaire; [*19] Attachments to Intake Questionnaire.) Like the six pages of documents the plaintiff in Holowecki attached to her questionnaire, Plaintiff's submissions taken as a whole and examined from the point of view of an objective observer are a clear attempt to "activate" the agency process on September 12, 2008. [7] The court therefore finds that Plaintiff's Intake Questionnaire is a "charge" for timeliness purposes.

[6]   In the decision that preceded the Supreme Court's review of Holowecki, the Second Circuit identified the following characteristics as evidence of a plaintiff's intent to activate the

administrative process: (1) the "forceful tone and content" of the plaintiff's submissions; (2) the fact that plaintiff had checked the "'consent' box on the questionnaire form" to allow disclosure of his identity; and (3) the plaintiff's "unambiguous[]" request that his employer's discriminatory practices end. *Holowecki v. Federal Express Corp., 440 F.3d 558, 568-69 (2d Cir, 2006)*. The Intake Questionnaire that the Plaintiff in the instant case submitted does not include a consent box; but the whole of his submission to the EEOC, as well as his repeated prior complaints to his employer and union representative, [*20] indicate no intent to make an anonymous complaint. (See Intake Questionnaire; Attachments to Intake Questionnaire.) As noted above, Plaintiff's tone is forceful and his request that the discrimination end is unambiguous.

[7]   The court notes, that the form of the Intake Questionnaire here differs from the form used in Holowecki--but to the extent that this difference is of any import, it seems to support Plaintiffs position. The Holowecki Court noted that the "design of the form in use" at that time did "not give rise to the inference that the employee requests action" by filing it. *522 U.S. at 405*. "In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it has jurisdiction over 'potential charges.' " Id. By contrast, the fine print at the end of the relevant form at issue in the instant case indicates that the EEOC *will*, in some cases, interpret an intake questionnaire as a charge. The questionnaire Plaintiff completed reads: "When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent [*21] with *29 C.F.R. 1601.12(b)* and *29 C.F.R. 1626.8(b)* consider it to be a sufficient charge of discrimination under the relevant statute(s)." (Intake Questionnaire at 4, n.3.)

**2. Plaintiff Has Alleged a Disability and Stated a Prima Facie Case of Discrimination**

Defendants also argue that the Complaint should be dismissed because it fails to state a claim of discrimination under the ADA. (Def. Mem at 8-12; Def. Objection to R&R at 3.) Here, Plaintiff requested an

Case 6:11-cv-01248-LEK-DEP   Document 19   Filed 12/09/11   Page 44 of 49

Page 7

2011 U.S. Dist. LEXIS 67419, *21; ;
24 Am. Disabilities Cas. (BNA) 1430

accommodation for his alleged disability: a handicapped parking pass in a lot closer to his entrance. 8 Because Plaintiff's claim is based on the denial of this request, the court reads his discrimination claim as a claim for failure to provide reasonable accommodation under *Section 12112(b)(5)(A) of the ADA.* 9

> 8   Although, at some points, Plaintiff complains of the physical stress of his current job assignment, he elsewhere notes that he is "not asking to be accommodated with a post or a tour," but instead is focusing his request for accommodation on getting a parking pass. (Attachments to Intake Questionnaire at 2.) Plaintiff's additional references to his requests to change posts appear to relate only to his retaliation claim, which [*22] the court finds meritless.
>
> 9   Defendants' objections to the R&R focus on Plaintiff's failure to adequately state facts that support a disparate treatment claim. (Def. Objection to R&R at 2.) Their Motion to Dismiss likewise focuses largely on disparate treatment and only briefly references Plaintiff's failure to accommodate claim. (See Def. Mem. at 8-9.) Because the court reads Plaintiff's remaining claim as a failure to accommodate claim, not a disparate treatment claim, Defendants' objections are addressed to the extent that they are relevant to that type of claim.

The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *42 U.S.C. § 12112(a),* In addition to other forms of discrimination (such as disparate treatment and disparate impact), see *42 U.S.C. § 12112(b),* discrimination includes an employer's failure to provide reasonable accommodation; that is

> not making reasonable accommodations to the known physical or mental limitations of an otherwise [*23] qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business

of such covered entity.

*Brady v. Wal-Mart Stores. Inc., 531 F.3d 127, 134 (2d Cir. 2008)* (quoting *42 U.S.C. § 12112(b)(5)(A)).* 10 An individual is otherwise qualified if "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that such individual holds or desires." *42 U.S.C. § 12111(8).*

> 10   Defendants do not dispute that they are a covered employer within the meaning of the ADA.

To establish a prima facie failure to accommodate claim, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) his employer refused to make such accommodations. *Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).* "A plaintiff has to adequately allege all the elements of [his] claim [] in order to survive a motion to dismiss; a finding that a plaintiff has failed to plead with sufficient [*24] specificity any one of the elements is enough to support a dismissal of the claim." *O'Neill v. Hernandez, No. 08 Civ. 1689 (KMW)(RLE), 2009 U.S. Dist. LEXIS 27448, 2009 WL 860647, at *5 (S.D.N.Y. March 31, 2009).*

Here, Defendants argue that Plaintiff has failed to adequately allege the first element--that he is disabled under the ADA, (Def. Mem. at 9-10; Def. Objection to R&R at 3.) A person has a "disability" as defined by the ADA if (a) he has a physical or mental impairment that substantially limits one or more of his major life activities; (b) he has a record of such an impairment; or (c) he is regarded as having such an impairment. *42 U.S.C. § 12102(1).* Under the first definition of disability, a court must determine whether (1) the plaintiff has a physical impairment; (2) the impairment affects a major life activity in which the plaintiff is involved; and (3) the major life activity is substantially limited because of the impairment. *Bragdon v. Abbott, 524 U.S. 624, 631, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998);* see also *Bartlett v. N.Y. State Bd. of Law Exam'rs, 226 F.3d 69, 79 (2d Cir. 2000)* (discussing meaning of "impairment"). All three elements must be satisfied in order for a plaintiff's condition to qualify as an ADA-recognized disability. [*25] *Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).* Here, Plaintiff has sufficiently

alleged each of these factors.

a. Physical or Mental Impairment

The EEOC regulations define physical impairment as: "Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." *29 C.F.R. § 1630.2(h)(1)*. And this Circuit has consistently looked to EEOC regulations with "great deference" in determining whether a person is disabled under the ADA. *Bartlett 226 F.3d at 79*. Plaintiff alleges that he has a physical impairment--namely, permanent injuries to both knees and his right hand. (Compl. ¶ 1.) In support of this allegation, Plaintiff attached to his Complaint a notice of decision from the New York State Worker's Compensation Board, which documents his schedule loss of use, classifies his injuries as "Permanent Partial Disabilities]," and awards him benefits temporarily. (Worker's Comp. Decision (Docket Entry # 24-1).) [*26] Therefore, the court concludes for purposes of this motion, that Plaintiff has a physical impairment.

b. Major Life Activity

"The term 'major life activity]," by its ordinary and natural meaning, directs us to distinguish between life activities of greater and lesser significance." *Bartlett, 226 F.3d at 79* (citations omitted; alteration in original). Although the ADA does not define "major life activity," the EEOC regulations implementing the ADA explain the term. And, while these regulations are not binding, the Second Circuit has looked to them for guidance and affords them significant deference. See, e.g., *Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870* (citing *Francis v. City of Meriden, 129 F.3d 281, 283 n.l (2d Cir. 1997)* (stating that courts owe "great deference" to EEOC regulations interpreting ADA)).

The regulations enumerate activities that are "major life activities *per se*," *Reeves v. Johnson Controls World Servs., 140 F.3d 144, 152 (2d Cir. 1998)*, including "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," *28 C.F.R. § 35.104 (1999)*. "[T]his list . . . is meant to be illustrative and not exclusive." *Bartlett, 226 F.3d at 79-80* [*27] (quoting *Reeves, 140 F.3d at 150*). Here, Plaintiff alleges that his disabilities affect the major

life activities of working and walking. (Pl. Reply (Docket Entry # 31) at 2; Attachments to Intake Questionnaire at 2.) Plaintiff also alleges that his disabilities limit him with regard to activities which, on their face, may not reasonably be deemed "major." (See Pl. Reply ¶ 2 (discussing social and recreational activities, such as playing sports).) Nonetheless, because the regulations define walking and working as major life activities, Plaintiff has sufficiently pled that his injuries impact a major life activity.

c. Substantially Limited

The EEOC regulations define "substantially limits" as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

*29 C.F.R. § 1630.2(j)(l)*; see also *Colwell, 158 F.3d at 643* (applying this definition). They further state that the [*28] following factors should be considered in determining whether a person is substantially limited in a major life activity:

> (i) The nature and severity of the impairment;

> (ii) The duration or expected duration of the impairment; and

> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

*29 C.F.R § 1630.2(j)(2)*.

In objecting to the Judge Bloom's recommendation that Plaintiff's assertion that he has a disability should be read as sufficient to withstand a motion to dismiss, Defendants' primary argument is that "plaintiff has not adequately alleged [the] 'severity, duration, or impact'" of

Case 6:11-cv-01248-LEK-DEP   Document 19   Filed 12/09/11   Page 46 of 49

Page 9

2011 U.S. Dist. LEXIS 67419, *28; ;
24 Am. Disabilities Cas. (BNA) 1430

his injuries. (Def. Objection to R&R at 3.) The court disagrees with this characterization, and finds that Plaintiff has adequately pled that his impairment substantially limits a major life activity.

First, as to duration and permanence, Plaintiff's pleadings indicate that he sustained job-related injuries in 1998 and that the effects of these injuries are ongoing. (Compl. ¶¶ 1,2; Pl. Reply ¶ 2; Attachments to Intake Questionnaire at 1-2). Plaintiff describes the challenges he faces in present tense. (See, e.g., Pl. Reply ¶ 2 (stating that his [*29] disability "puts limits on [his] activities"); Attachments to Intake Questionnaire at 2.) And, Plaintiff repeatedly describes his injuries as "getting wors[e]." (Pl. Reply ¶ 2; see also Attachments to Intake Questionnaire at 2 (stating that a medical specialist has advised Plaintiff that, as a result of his injuries, he has arthritis and is very likely to develop "water build up" over time).) Referencing the Worker's Compensation Board's 2002 decision, Plaintiff characterizes his condition as a "permanent and partial disability." (Attachments to Intake Questionnaire at 2; see also Worker's Comp. Decision at 1-2.) [11]

11  Defendants characterize Plaintiff's injuries, as shown on the Worker's Compensation Board Notice of Decision, as "temporary," apparently because the benefits the Board awarded to Plaintiff were for a limited period. (Def. Objection to R&R (stating that the Worker's Compensation Board decision "showed that plaintiff was deemed 'permanent partial disable[ed] [sic] due to a 10.00% scheduled loss of the use of his left leg' from June 12, 1998 through December 31, 1998 and a '7.50% schedule loss of use of the Right Hand' from June 12, 1998, through October 20, 1998"); Def. [*30] Mem. at 10 (same).) On a motion to dismiss, this characterization is insufficient to overcome Plaintiff's contention that his disability is permanent. (See Fouad v. Jeport Hotel Corp., No. 01 Civ. 8502 (GBD), 2005 U.S. Dist. LEXIS 16149, 2005 WL 1866329, at *2 (S.D/N.Y. Aug. 5, 2005) (denying motion to dismiss where defendant contended that plaintiffs injury was temporary, but plaintiff pled that it was not). The court also notes that the Worker's Compensation Board decision, on its face, describes each of Plaintiff's injuries as a "Permanent Partial Disability" despite the fact that the Board seems

to have awarded benefits for a limited period of time. (See Worker's Comp. Decision at 1-2.) Defendants have provided no authority that suggests that in the context of a Worker's Compensation Board decision, categorization as a "Permanent Partial Disability" should be read to mean mat Plaintiff's disability was "temporary."

Plaintiff also states facts that indicate the nature and severity of his impairment. He states that he has pressure in his knees, that he is unable to take long walks, and that he faces limitations in his personal life. (Compl. ¶ 2; Pl. Reply ¶ 2.) Plaintiff alleges that he is unable to run, jump, [*31] take walks, and stand while waiting in lines or riding the train. (Attachments to Intake Questionnaire at 2.) He describes his work environment as physically demanding, and is impacted in the normal, daily course of his work. (Id. (describing "[t]he long walk from the parking lot to the Main Control Building at the Front Gate and standing waiting for a route bus to take me to my assigned command," after which "I am walking consistently from escorting inmates, climbing stairs to responding to alarms and putting twenty (25) pound of riot gear on and running down long corridors for emergencies."); Compl. ¶ 1 (stating that he has "worked in the DOC most violent facilities"); Pl. Reply ¶ 2 (complaining that injuries impact him "on [the] job").) Plaintiff also states that he is limited in his ability to conduct his personal day-to-day affairs. (Attachments to Intake Questionnaire at 2 (noting limitations on his "personal life," including "walking, waiting in lines[,] standing on trains[, and] climbing stairs"); see also Pl. Reply ¶ 2.)

In light of the facts alleged in the Complaint, it would be premature to dismiss Plaintiffs claim on the instant motion. See, e.g. Brtalik v. S. Huntington [*32] Union Free Sch. Dist., No. CV-10-0010, 2010 U.S. Dist. LEXIS 107373, 2010 WL 3958430, at *9 (E.D.N.Y. Oct. 6, 2010) (denying motion to dismiss even though the court was doubtful plaintiff's allegations, including a knee injury and heel pain, constituted an ADA disability); see also Colwell, 158 F.3d at 643 (determination as to whether a plaintiff's impairment "substantially limits" a major life activity is an "individualized and fact-specific inquiry") (citations omitted). Given the liberal pleading standard for pro se litigants, Plaintiff has sufficiently alleged that he has a "disability."

There can be no dispute that Plaintiff has met the

Case 6:11-cv-01248-LEK-DEP   Document 19   Filed 12/09/11   Page 47 of 49

Page 10
2011 U.S. Dist. LEXIS 67419, *32; ;
24 Am. Disabilities Cas. (BNA) 1430

pleading requirements as to the second and third elements of his failure to accommodate claim: that his employer had notice of his alleged disability; and that he could perform the essential functions of his job with reasonable accommodation. Plaintiff alleges that he notified both his supervisor, Warden Davis, and his union representative, J. Bracco, about his need for accommodation (Compl. ¶ 12), and Plaintiff's correspondence with his supervisors is extensive and spans a period of several years (see Attachments to Intake Questionnaire). Plaintiff also states that he is able [*33] to perform the essential functions of his job once he arrives at his post. Plaintiff states that he continues to perform his job as a Correction Officer, albeit with some difficulty (Compl. ¶ 1), and that he is "not overwhelmed" by his current responsibilities (Pl. Opp. ¶ 2). (See also Attachments to Intake Questionnaire at 2 (stating that provision of a parking pass would allow him to relieve pressure on his knees, such that he could avoid additional injury and absenteeism).)

Plaintiff has also alleged the fourth element: that his employer refused to make reasonable accommodations. Plaintiff states that his initial request for a handicapped parking pass was denied. (Compl. ¶ 2.) He acknowledges, however, that during the course of this litigation, Defendants have provided Plaintiff with a handicapped parking pass for a lot other than the one he requested. (Pl. Reply ¶ 2.) Plaintiff states that this accommodation, which allows him to park in a handicapped space on the East Side of Rikers Island and take a bus to his assigned Command, is insufficient. Although the parking space in the East Side lot is designated as "handicapped," it is far from Plaintiff's place of work and requires [*34] him to stand at a bus stop and take a bus to his post. (Def. Reply ¶ 2.) Plaintiff continues to request access to a handicapped parking space in front of the Command Building where he works, and he states that Defendants have continued to deny his request for a parking spot in the Command lot. (Id.)

There is nothing inherently unreasonable about requiring that an employer accommodate an employee by providing a reserved parking space, and "the determination of the reasonableness of such a requirement will normally require some development of a factual record." *Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1516 (2d Cir. 1995)* (finding that plaintiff stated a claim for disability discrimination where employer refused to pay $300-$520 per month for her to park in a parking lot near her office). Among the factors that may be relevant

in making this determination are "the employer's geographic location and financial resources." Id. (citing *Borkowski v. Valley Central Sen. Dist., 63 F.3d 131, 138-40 (2d Cir. 1995)* (Rehabilitation Act); *Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995)* (reversing *Rule 12(b)(6)* dismissal). [12]

> 12  By providing Plaintiff with a handicapped parking pass for a [*35] lot, albeit one far from his duty station, Defendants arguably concede that Plaintiff qualifies for a pass, pursuant to their own policies. Regardless of the sufficiency of Plaintiff's claim that the ADA entitles him to something more, there is no question that the City would expend fewer resources by providing Plaintiff with a parking pass for Defendants' own Command lot, rather than continuing to litigate this case.

While the ADA "does not require the employer to provide every accommodation a disabled employee may request," it does require that "the accommodation provided is reasonable." *D'Eredita v. ITT Corp., 370 Fed. Appx. 139, 141* (citing *Fink v. N.Y. City Dep't of Personnel, 53 F.3d 565, 567 (2d Cir. 1995)* (stating same rule in Rehabilitation Act context)). Plaintiff has sufficiently pled that his employer has denied his request for a reasonable accommodation. Although Defendants' proposed accommodation--a parking pass for a lot with bus access to Plaintiff's post--may well be a reasonable one, this issue is a question of fact that the court declines to resolve on a motion to dismiss.

### 3. Plaintiff Need Not Show Causation

Defendants argue that Plaintiff has failed to show causation, [*36] i.e. that Defendants took an adverse employment action against Plaintiff because of his disability. (Def. Objection to R&R at 3.) This element is required in order to make out a prima facie case for disparate treatment, but not for reasonable accommodation. Compare *Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)* (stating elements of prima facie claim for reasonable accommodation) with *Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)* (stating elements of prima facie disparate treatment claim). The court finds that Plaintiff's Complaint does not state facts that support a disability discrimination claim on a basis other than the alleged failure to provide reasonable accommodation. Accordingly, Defendants' causation argument is misplaced.

2011 U.S. Dist. LEXIS 67419, *36; ;
24 Am. Disabilities Cas. (BNA) 1430

**III. CONCLUSION**

Defendants' Motion to Dismiss is DENIED as to Plaintiff's claim for failure to provide reasonable accommodation, and GRANTED as to the remaining claims.

SO ORDERED.

Dated: Brooklyn, New York

June 20, 2011

/s/ Nicholas G. Garaufis

NICHOLAS G. GARAUFIS

United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOAN E. EVANS,

                              Plaintiff,                    Civil Action No. 6:11-CV-01248
                                                                          (LEK-DEP)
              v.
                                                           **CERTIFICATE OF SERVICE**

EXCELLUS HEALTH PLAN, INC. d/b/a EXCELLUS
BLUECROSS BLUESHIELD; HELEN ROSER; LYNN
MAROLF; CHRISTOPHER BOOTH; and JOHN
DOE(S) and JANE DOE(S),

                              Defendants.

I hereby certify that on December 9, 2011, I electronically filed Defendants'

Memorandum of Law in Further Support of its Motion to Dismiss the Complaint and the

Amended Complaint, with the Clerk of the United States District Court for the Northern

District of New York, using the CM/ECF system, which sent notification of such filing to

the following:

A.J. Bosman, Esq.
Bosman Law Office
*Attorneys* for *Plaintiff*
Office and Post Office Address
6599 Martin Street
Rome, New York  13440
Email: aj@bosmanlawfirm.com


                              /s/ Laura H. Harshbarger
                              Laura H. Harshbarger

1930672.1