UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOAN E. EVANS,

                              Plaintiff,

        -against-                                          6:11-CV-1248 (LEK/DEP)

EXCELLUS HEALTH PLAN, INC. d/b/a
EXCELLUS BLUE CROSS BLUESHIELD;
HELEN ROSER; LYNN MAROLF;
CHRISTOPHER BOOTH; and JOHN
DOE(s) and JANE DOE(s),

                              Defendants.

_____

## MEMORANDUM-DECISION and ORDER

**I.      INTRODUCTION**

        On or about September 16, 2011, Plaintiff filed a Complaint with the Supreme Court of the

State of New York, County of Oneida.  See generally Dkt. No. 1, Ex. A ("Complaint").  Plaintiff

raised several causes of action related to the termination of Plaintiff's employment with Defendant

Excellus Health Plan, Inc. d/b/a Excellus Blue Cross BlueShield ("Excellus") including: (1)

discharge in violation of public policy/breach of implied contract; (2) age discrimination in violation

of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; (3) age

discrimination in violation of New York State Human Rights Law; (4) retaliatory discharge in

violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203; (5) retaliatory

discharge in violation of New York State Human Rights Law; and (6) prima facie tort.  Id. ¶¶ 11-47.

On October 19, 2011, Defendants removed the case to the Court on the grounds that the Court has

original jurisdiction over Plaintiff's claims under the ADA and ADEA.  Dkt. No. 1 ("Notice of

Removal") ¶¶ 1, 7-9.

Presently before the Court is Defendants' October 26, 2011 Motion to dismiss Plaintiff's

Complaint in its entirety.  Dkt. No. 3 ("Motion").  On November 18, 2011, Plaintiff filed an

Amended Complaint, in which Plaintiff added a cause of action under the Employment Retirement

Income Security Act ("ERISA").  Dkt. No. 9 ("Amended Complaint") ¶ 1.  Then, on December 1,

2011, Plaintiff filed a Response in opposition to Defendants' Motion to dismiss the original

Complaint.  Dkt. No. 12 ("Response").  As a result, on December 9, 2011, Defendants filed a

Memorandum of law that simultaneously served as an Answer to Plaintiff's Amended Complaint

and a Reply to Plaintiff's Response to Defendants' Motion to dismiss.  Dkt. No. 19 ("Reply").  In

Defendants' Reply, Defendants declined to proceed with seeking dismissal of Plaintiff's claims

under New York Human Rights Law.  Id. at 1.

For the reasons that follow, the Court denies Defendants' Motion with respect to Plaintiff's

claims under the ADA and ADEA and grants Defendants' Motion with respect to Plaintiff's causes

of action under ERISA, for *prima facie* tort, wrongful discharge in violation of public policy, and

breach of implied contract.

## II.   BACKGROUND

In or around September 2003, Plaintiff was employed by Excellus as a Customer Service

Representative.  Dkt. No. 20-1 ("Intake Questionnaire") at 1.  Plaintiff had previously been

employed by Excellus between 1978 and 2002.  See Am. Compl. ¶¶ 3, 20. At all times relevant to

the instant proceeding, Plaintiff worked in Excellus's Utica, NY office and was supervised by Helen

Roser ("Defendant Roser") and/or Lynn Marolf ("Defendant Marolf").  Id. ¶¶ 3, 5-6.

In or around October or November 2009, Plaintiff alerted Christopher Booth ("Defendant

Booth"), the Vice President of Excellus, and others that Excellus was engaged in an "unlawful

practice" of charging "Medicare retirees a penalty." Id. ¶¶ 7, 12. Plaintiff argues that Plaintiff had a "fiduciary duty" to address Excellus's errant billing. Id. ¶ 15. As a result of Plaintiff's report, Excellus announced it "would be liable for the financial penalties initially charged against the Medicare retirees." Id. ¶ 13. Plaintiff was terminated approximately one month later, on November 18, 2009; as a result, Plaintiff believes her termination was retaliatory. Id. ¶¶ 14, 16.

Additionally, in or around 2009, Plaintiff mentioned to Defendant Roser that she had "taken offense" to a comment Plaintiff overheard Defendant Roser make in November, 2003, in which Defendant Roser allegedly referred to a deaf employee as a "hearing impaired bitch." Dkt No. 3-1, Ex. A ("Charge of Discrimination"). Plaintiff also "spoke up" about Defendant Roser's mistreatment and firing of other employees. Id. Plaintiff had, at all times relevant to the proceedings, satisfactorily performed the duties of her position. Am. Compl. ¶ 21. However, in or around October, 2009, Plaintiff was "written up" for allegedly "handling calls inappropriately." Charge of Discrimination. Plaintiff was then terminated for "insubordination," id., and "misconduct" for having allegedly made "false accusations." Intake Questionnaire at 2.[1] Therefore, Plaintiff believes that Plaintiff's termination was in retaliation for reporting disability discrimination. Am. Compl. ¶ 35.

Furthermore, at all times relevant to the instant proceeding, Plaintiff was over forty years of age. Id. ¶ 19. When Plaintiff was terminated on November 18, 2009, Plaintiff was the "oldest of the [Customer Service Representative]s in [her] department." Charge of Discrimination. Plaintiff alleges that Defendant Roser frequently made comments about Plaintiff's hearing and told

---

[1] The New York State Department of Labor's Unemployment Insurance Division subsequently determined that Plaintiff had not committed misconduct. Am. Compl. ¶ 22.

employees that "just because you have a lot of years on the job doesn't mean your job is secure." Am. Compl. ¶ 26.  Additionally, Plaintiff asserts that, during Plaintiff's employment, Plaintiff witnessed Defendant Roser remove "many employees who were over 40 years of age from her department." Id. ¶ 24.  And, Plaintiff believes that, in spite of Plaintiff's performance, Defendants Roser and Marolf failed to grant Plaintiff pay raises that were afforded to younger employees and overly scrutinized Plaintiff's performance.  Id. ¶ 25.  As a result, Plaintiff believes that her termination was based on Plaintiff's age.  Id. ¶ 27.

On September 14, 2010, Plaintiff filed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC").  See generally Intake Questionnaire.  Plaintiff claimed that she had been subject to age and disability-related employment discrimination when Defendant Roser falsely terminated her for misconduct.  Id. at 2.  Plaintiff also affirmatively checked a box indicating Plaintiff wanted to "file a charge of discrimination" and authorizing the EEOC to investigate the claimed discrimination.  Id. at 4.  On October 14, 2010, the EEOC Buffalo Office provided Plaintiff with a summary of Plaintiff's claims under the ADEA and ADA.  Dkt. No. 13-1, Ex. B ("Charge Notice").  Then, on April 27, 2011, the EEOC closed its investigation and notified Plaintiff of Plaintiff's right to bring suit in federal or state court.  Dkt. No. 13-1, Ex. D.

As a result of Defendants' alleged discriminatory, retaliatory, and tortious conduct in terminating Plaintiff, Plaintiff claims that she has suffered damages including lost wages and employment benefits, physical and emotional suffering, and humiliation.  See generally Am. Compl.

## III.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all [factual] allegations in the complaint as true and draw all

inferences in the light most favorable to" the non-moving party.  In re NYSE Specialists Sec. Litig.,

503 F.3d 89, 95 (2d Cir. 2007).[2]  However, the "tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009).

　　　To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard "is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Twombly, 550 U.S. at 570).  Facial plausibility exists "when the pleaded

factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id.

　　　"Documents that are attached to the complaint or incorporated in it by reference are deemed

part of the pleading and may be considered."  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)

(citations omitted).  The Court may also consider documents that, although "not incorporated by

reference," are "integral to the complaint."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d

Cir. 2002) (internal citation omitted).  Therefore, the Court may properly consider public documents

as well as documents filed with the EEOC, such as Plaintiff's Intake Questionnaire and the Charge

Notice.  See, e.g., Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2d Cir. 2006) (finding it

---

[2]  Although Defendants' initial Motion was brought pursuant to Rules 12(b)(6) and 12(b)(1),
it appears to the Court that only Defendants' election of remedies argument with respect to
Plaintiff's causes of action under New York Human Rights Law invoked subject matter jurisdiction.
See Dkt. No. 3-2 ("Defendants' Memorandum") at 1, 3-5.  Insofar as Defendants have declined to
proceed with dismissal of these causes of action, Reply at 1, the Court's discussion in Part IV, infra,
is under the plausibility standard of Rule 12(b)(6).

proper for the court to "consider the plaintiffs' relevant filings with the EEOC" and documents relied upon to satisfy statutory time requirements), aff'd, 552 U.S. 389 (2008); Davis v. Columbia Univ., No. 09 CV 9581, 2010 WL 2143665, at *2 (S.D.N.Y. May 26, 2010) (considering plaintiff's termination letter, EEOC Charge of Discrimination, and Right to Sue letter).

## IV.   DISCUSSION

### A.  Plaintiff's ADA and ADEA claims are not time-barred

Defendants seek dismissal of Plaintiff's third cause of action for age discrimination under the ADEA, and fifth cause of action, for retaliatory discharge under the ADA on the grounds that both claims are time-barred.  Defs.' Mem. at 2.  Under both Acts, a charge must be filed with the EEOC within one hundred and eighty days after the alleged unlawful employment practice.  See 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B).  But, where a claim has already been filed with a State or local agency with the authority to grant relief from the alleged unlawful employment practice, a charge must be filed with the EEOC within three hundred days after the alleged unlawful employment practice occurred.  See id.[3]  This statutory requirement is "not a jurisdictional prerequisite to suit in federal court" but rather is analagous to a "statute of limitations," subject to "waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

---

[3]  There is no evidence in the record that Plaintiff filed a charge with a State or local agency. However, since neither party has disputed that the 300-day statutory period applies, the Court will accept this fact as stipulated.  See also Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996).  The Court further notes that, while the law clearly requires a party to have "initially instituted proceedings with a State or local agency" in order to benefit from the longer statutory filing period, see 42 U.S.C. § 2000e-5(e)(1), the EEOC's Intake Questionnaire instructs filing parties that they may benefit from the 300 day period if "the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws."  Intake Questionnaire at 4.

Defendants argue that Plaintiff's charge was untimely because it was filed on November 24, 2010, 371 days following Plaintiff's November 18, 2009 termination. Defs.' Mem. at 3. November 24, 2010 is, indeed, the filing date of Plaintiff's EEOC Form 5. See Charge of Discrimination. However, EEOC Form 5 is merely a summary of the claims Plaintiff had already made to the EEOC that was sent to the Plaintiff for Plaintiff's review and authorization of the EEOC's investigation. Id. Moreover, the EEOC mailed Plaintiff the Form 5 for review on October 14, 2010. Charge Notice. In the accompanying letter, the EEOC stated that Plaintiff's previously filed Intake Questionnaire "constitutes a charge of employment discrimination" and that "[f]or purposes of meeting the deadline for filing a charge, the date of your [Intake Questionnaire] will be retained as the original filing date." Id. As a result, Defendants' argument that the Court should consider November 24, 2010 to be the charge filing date is unconvincing.

Alternatively, Defendants argue that Plaintiff's Intake Questionnaire is insufficient to be considered a charge. Reply at 2-4. Plaintiff's Intake Questionnaire was filed with the EEOC on September 14, 2010, the three hundredth day following Plaintiff's termination. Intake Questionnaire at 1. Therefore, if the Intake Questionnaire is sufficient, it is a timely-filed charge.

Neither the ADEA nor the ADA defines the term "charge." See 29 U.S.C. §§ 626, 630; 42 U.S.C. § 2000e. However, in Federal Express Corp. v. Holowecki, the Supreme Court expounded on the meaning of "charge," and the requirements for filing a charge with the EEOC under the ADEA. See 552 U.S. 389 (2008). The Holowecki Court adopted a "request-to-act" interpretation under which a charge requires: (1) an "allegation and the name of the charged party," and (2) evidence that an objective observer would "reasonably construe" the filing "as a request for the agency to take remedial action to protect the employee's rights." Id. at 401-02. This is a

7

"permissive standard" under which a "wide range of documents may be classified as charges." Id. at 402. Accordingly, the Supreme Court held that the plaintiff's EEOC intake form (naming the employer, number of employees, and alleging age discrimination) and supplemental affidavit requesting the EEOC to "force" the employer to cease its age discrimination were sufficient to constitute a charge under the ADEA. Id. at 404-05.

Here, although one "must be careful not to apply rules applicable under one statute to a different statute without careful and critical evaluation," see Holowecki, 552 U.S. at 393, the Court will apply the "permissive standard" for charges espoused by Holowecki to both Plaintiff's ADEA and ADA causes of action. In this instance, the regulations governing charges under the ADA, see 29 C.F.R. § 1601, are remarkably similar in both language and purpose to those governing the ADEA and interpreted by Holowecki. See 29 C.F.R. § 1626; Price v. City of New York, 797 F. Supp. 2d 219, 225-26 (E.D.N.Y. 2011) (collecting cases from other circuits and making a threshold determination for the Second Circuit that a Holowecki interpretation of ADEA charge requirements should apply similarly to ADA and Title VII actions).[4]

Defendants contend that Plaintiff's Intake Questionnaire alone is insufficient to constitute a charge because it did not request action by the EEOC. Reply at 2-4.[5] While the Holowecki court

---

[4] The Court also notes that the briefs submitted by both parties apply Holowecki indiscriminately to both Plaintiff's ADEA and ADA claims. See Resp. at 2-3; Reply at 2-4.

[5] The cases cited by Defendants all found the intake questionnaire insufficient on its own because there was no demand for enforcement action by the EEOC. See Broich v. Inc. Vill. of Southampton, No. CV-08-0553, 2011 WL 284484, at *7 (E.D.N.Y. Jan. 25, 2011) (finding an intake questionnaire lacking because it specifically indicated its completion did "not constitute filing a charge" but was for informational and jurisdictional purposes and because it was "devoid of any request that the EEOC act to stop the alleged discrimination"); Morrow v. Metro. Transit Auth., No. 08 CIV. 6123, 2009 WL 1286208, at *6 (S.D.N.Y. May 8, 2009) (concluding the purpose of the intake form was to assist the agency in determining whether it had jurisdiction and in counseling

stated that, "were the Intake Questionnaire the only document before" the court, the Questionaire

may not have been sufficient because, by its wording, the questionnaire did not request EEOC

action but rather suggested that the form's purpose was "pre-charge filing counseling." Holowecki,

552 U.S. at 405.

Since Holowecki, the "EEOC has changed the form" to require claimants to check a box to

clearly express if they request the EEOC "to take remedial action." Lugo-Young v. Courier

Network, Inc., No. 10-CV-3197, 2012 WL 847381, at *6 (E.D.N.Y. Mar. 13, 2012).  In this case,

the Intake Questionnaire completed by Plaintiff instructs an individual who "would like more

information about filing a charge" to "check Box 1," while an individual who "want[s] to file a

charge" should "check Box 2."  Intake Questionnaire at 4.  Plaintiff checked Box 2, which further

states that Plaintiff is seeking to "file a charge of discrimination" and authorizes "the EEOC to look

into the discrimination" alleged.  Id.[6]  Therefore, Plaintiff unambiguously requested the EEOC to act

on her claims.

Additionally, the Intake Questionnaire names Excellus as the charged party and contains

allegations of age and disability discrimination.  Id. at 1-2.  As a result, the Intake Questionnaire

---

plaintiff about filing a formal charge and did not request that the EEOC "activate its enforcement
machinery"); Simpson v. City of New York Dept. of Hous. Pres. & Dev., No. 08 Civ. 0185, 2009
WL 996388, *6 (S.D.N.Y. Apr. 13, 2009) (determining an intake questionnaire was not a charge
where it was not supported by an affidavit, there was no "consent box" or indication the EEOC
could disclose the plaintiff's identity, and no "unambiguous request" the employer "cease its alleged
discriminatory practices" because there was no evidence of "intent" to activate the administrative
process.").

[6] Plaintiff also authorized the EEOC to disclose her identity to Defendant.  Id.  Further, the
EEOC's Charge Notice informed Plaintiff that the Intake Questionnaire filed "constitutes a charge
of employment discrimination" that had caused the EEOC to act by notifying "the employer that
you filed a charge."  Charge Notice.

meets the <u>Holowecki</u> criteria.[7]  Consequently, Plaintiff filed a charge with the EEOC within 300

days of Plaintiff's termination and Plaintiff's ADA and ADEA claims are not time-barred.

### B.  Plaintiff has failed to plead a cause of action for *prima facie* tort

Plaintiff's seventh cause of action for *prima facie* tort alleges that the Individual Defendants

– Defendants Roser, Marolf, Booth, John Doe(s), and Jane Doe(s) – acted intentionally and with

malice in their treatment and termination of Plaintiff.  <u>See</u> Am. Compl. ¶¶ 44-46.  Defendants argue

that Plaintiff was an "at-will employee" and so, as a matter of law, Plaintiff cannot maintain that her

termination was a *prima facie* tort.  Defs.' Mem. at 6.

A *prima facie* tort requires the "infliction of intentional harm, resulting in damage, without

excuse or justification, by an act or series of acts which would otherwise be lawful."  <u>ATI, Inc. v.</u>

<u>Ruder & Finn, Inc.</u>, 42 N.Y.2d 454, 458 (N.Y. 1977).  There must also be an "allegation of special

damages."  <u>Id.</u>  Nonetheless, it is well established that, in New York, there is "no tort claim for

wrongful discharge . . . of an at-will employee."  <u>Murphy v. Amer. Home Prods. Corp.</u>, 58 N.Y.2d

293, 304 (N.Y. 1983).  An at-will employee cannot use a *prima facie* tort claim as a "bootstrap" to

circumvent the lack of a tort claim for wrongful discharge or deficient pleadings merely by alleging

that the termination was motivated solely by a desire to harm the plaintiff.  <u>See</u> <u>id.</u> at 303-04.[8]

---

[7]  <u>See also</u> <u>Kaye v. Storm King Sch.</u>, No. 11 CV 3369, 2011 WL 7101193, at *3 (S.D.N.Y. Nov. 18, 2011) (finding EEOC submission sufficient where it provided "basic information relating to the charges" and plaintiff checked a box stating plaintiff wanted to "file a charge of discrimination"); <u>cf.</u> <u>Lugo-Young</u>, 2012 WL 847381, at *6 (declining to find an intake questionnaire to be a charge where plaintiff checked the box indicating "she wanted to talk to an EEOC employee before deciding whether to file a charge") (internal citations and omissions excluded).

[8]  In <u>Murphy</u>, the plaintiff contended he was dismissed in a humiliating manner based on his age and disclosure of alleged accounting improprieties.  <u>Id.</u> at 303.  The court dismissed his *prima facie* tort claim as an attempt to bootstrap a wrongful discharge claim.  <u>Id.</u> at 304; <u>see also</u> <u>Jones v.</u>

Here, Plaintiff has not alleged that she was employed pursuant to an enforceable

employment contract, and the facts do not suggest Plaintiff's employment was for a definite term;

therefore, the Court must presume that Plaintiff was an at-will employee. See Horn v. N.Y. Times,

100 N.Y.2d 85, 90-91 (N.Y. 2003). Yet, while the Court agrees with Defendants that Murphy

clearly establishes the unavailability of *prima facie* tort as a cause of action in lieu of wrongful

discharge, Plaintiff does not bring her *prima facie* tort cause of action against Excellus as an

employer but rather only against Defendants Booth, Marolf, and Moser for their individual

involvements and actions leading towards Plaintiff's termination. See Am. Compl. ¶ 45.[9]

Therefore, if Plaintiff can state facts sufficient to make out a plausible claim for *prima facie* tort

-----

Ecological Analysts, Inc., No. 84 Civ. 1226, 1986 WL 6168, at *5 (S.D.N.Y. 1986) (dismissing plaintiff's *prima facie* tort claim as an attempt of an at-will employee to bootstrap a wrongful discharge tort onto Title VII discrimination claims); Shipper v. Avon Prods., Inc., 605 F. Supp. 701, 706-07 (S.D.N.Y. 1985) (dismissing plaintiff's ADEA claim for lack of a charge and finding plaintiff's *prima facie* tort claim was "no more than [an] inartful attempt[] to dodge" the New York Court of Appeals' holding in Murphy that the court would not allow "prima facie tort to circumvent unavailability of a tort claim for wrongful discharge") (internal citation omitted); Brooks v. Blue Cross of Northeastern N.Y., Inc., 593 N.Y.S.2d 119, 120 (N.Y. App. Div. 1993) (granting summary judgment on the grounds that the plaintiff's allegation that he was discharged following a "campaign of harassment" that included "unjustifiable criticism of his working ability," and "threats of firing" were too closely related to the unavailable cause of action of wrongful discharge to state a claim for *prima facie* tort).

[9] In Plaintiff's Response, Plaintiff cites Haddle v. Garrison, 525 U.S. 121 (1998), and Mansour v. Abrams, 534 N.Y.S.2d 602 (N.Y. App. Div. 1988), for the proposition that at-will employees may recover under New York tort law. Resp. at 7-8. However, both cases relate to the availability of tortious interference with contract as a cause of action where there is third party interference with at-will employment. See Haddle, 535 U.S. at 126-27; Mansour, 534 N.Y.S.2d at 602. In this case, Plaintiff has not pleaded tortious interference with contract as a cause of action. See generally Am. Compl. And, the Court will not read this cause of action into Plaintiff's *prima facie* tort claim. Therefore, the Court can only infer that Plaintiff was trying to demonstrate the availability of individual tort liability where an individual's actions were causally related to the subsequent termination of an at-will employee.

11

against these individuals, the Court finds no precedent precluding the cause of action.[10]

Nevertheless, Plaintiff's *prima facie* tort pleading is wholly insufficient.  Merely labelling a

defendant's conduct malicious or wanton is insufficient, Wehringer v. Helmsley-Spear, Inc., 457

N.Y.S.2d 78, 80 (N.Y. App. Div. 1982); the plaintiff must allege facts sufficient to demonstrate that

a defendant's "sole motivation for the damaging acts" was a "malicious intention to injure the

plaintiff."  Marcella v. ARP Films, 778 F.2d 112, 119 (2d Cir. 1985).[11]  There is no recovery under a

*prima facie* tort theory if there are other motives behind a defendant's actions, "such as profit, self-

interest, or business advantage," id., or if there is no evidence of "personal animosity, hostility or

malice between plaintiff and his supervisors." O'Keefe v. Niagara Mohawk Power Corp., 714 F.

Supp. 622, 634 (N.D.N.Y. 1989).[12]

Here, Plaintiff does not allege that malice towards Plaintiff was the sole reason for each

Individual Defendant's actions.  See Am. Compl. ¶ 46.  Furthermore, the facts, when viewed in the

light most favorable to Plaintiff, are insufficient for the Court to infer that any of the Individual

---

[10] Cf. Stallings v. U.S. Electronics, Inc., 707 N.Y.S.2d 9, 11 (N.Y. Sup. Ct. 2000)
(reinstating *prima facie* tort claim against supervisor but upholding dismissal as to employer).

[11] See Kersul v. Skulls Angels, Inc., 495 N.Y.S.2d 886, 888-89 (N.Y. Sup. Ct. 1985)
(concluding that a plaintiff who was discharged for criticizing the preferential treatment her
supervisor gave to an employee with whom he was having a personal relationship successfully
stated a claim for sex discrimination but had no cause of action for *prima facie* tort because the
claim was merely an attempt to circumvent the pleadings by "alleging that the sole reason for
dismissal was to intentionally harm her.").

[12] See Korry v. Int'l Tel. & Tel. Co., 444 F. Supp. 193, 195 (S.D.N.Y. 1978) (dismissing
*prima facie* tort claim where the plaintiff alleged his termination was motivated by employer's
desire not only to injure plaintiff but also to protect its reputation and to shield the corporation from
liability). But cf. Sadowy v. Sony Corp. of Amer., 469 F. Supp. 1071, 1075 (S.D.N.Y. 1980)
(refusing to dismiss *prima facie* tort claim where the complaint repeatedly alleged that employer's
"sole motivation for the course of its allegedly harmful acts against plaintiff was to cause injury.").

Defendants were solely motivated by a desire to harm Plaintiff.

The only allegations in the Amended Complaint that implicate Defendant Booth are Plaintiff's report to Defendant Booth about Excellus's practice of charging a penalty to Medicare retirees and Plaintiff's termination approximately one month later. Id. ¶¶ 12-16. However, there is no evidence of personal animosity or hostility between Booth and Plaintiff. See generally id. Furthermore, Defendant Booth was Vice President of Excellus, id. ¶ 7.

Additionally, while there are more factual allegations related to the actions of Defendants Roser and Marolf, the facts also fail to demonstrate that these individuals were solely motivated by a desire to injure Plaintiff. By Plaintiff's own admission, Plaintiff witnessed "Defendant Roser rid many employees who were over 40 years of age from her department." Id. ¶ 24. Similarly, comments about job insecurity were made to a group of employees, and Plaintiff's belief that younger employees received pay raises would not only affect Plaintiff. Id. ¶¶ 25-26. The only actions that Plaintiff alleges were directed exclusively towards Plaintiff are: that Defendant Roser "regularly asked Plaintiff about her hearing," that "Defendants Roser and Marolf intensely monitored Plaintiff's calls," and that Plaintiff believes Defendant Roser caused Plaintiff's termination in retaliation for Plaintiff's complaint about a disparaging comment Defendant Roser had made about a disabled employee's hearing six years earlier. Id. ¶¶ 25-26, 35-38.

However, these facts form the basis of Plaintiff's causes of action for age discrimination and retaliatory discharge. See id. ¶¶ 18-28, 34-38. Therefore, if proved, these facts would themselves form the basis for unlawful conduct, and they cannot form the basis for a *prima facie* tort. See Wright v. City of Ithaca, N.Y., 5:12-cv-378, 2012 WL 1717259, at *4 (N.D.N.Y. May 15, 2012) (finding as ground for dismissal of *prima facie* tort claim that the "alleged injurious action –

13

employment discrimination based on race – is not an act that would otherwise be lawful").[13]
Therefore, the pleadings do not state facts from which the Court can infer the Individual Defendants
acted with the requisite intentional malice against Plaintiff to support a *prima facie* tort claim.

Additionally, Plaintiff has failed to allege special damages with the requisite specificity.
Any pleading of special damages must be sufficiently specific to "identify actual losses and be
related causally to the alleged tortious acts." Ginsberg v. Ginsberg, 443 N.Y.S.2d 439, 441 (N.Y.
Sup. Ct. 1981). Merely alleging "lost future income, conjectural in identity and speculative in
amount" is insufficient. Vigoda v. DCA Prods. Plus, Inc., 741 N.Y.S.2d 20, 22-23 (N.Y. App. Div.
2002); see also O'Keefe, 714 F. Supp. at 634 (finding a failure to plead specific damages where
damages were estimated and alleged in round numbers with no attempt at itemization).

Here, far short of an itemized and specific list, Plaintiff has not even monetized her request
for damages. See Am. Compl. ¶ 47. Plaintiff merely states she has sustained special damages "in a
sum not less than the total wages and benefits that would have been earned from continued
employment with Excellus." Id. This is not only conjectural but patently fails to relate Plaintiff's
sought damages to the acts of each Individual Defendant.

Consequently, Plaintiff has failed to plead, both factually and technically, that she has a
claim for *prima facie* tort. Therefore, the Court must dismiss the cause of action for failure to state

---

[13] See also Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 372 (W.D.N.Y. 2010)
(establishing that retaliation against a plaintiff for filing a discrimination complaint would not be
"otherwise lawful conduct" that could form the basis of a *prima facie* tort claim); Talvy v. Amer.
Red Cross of Greater N.Y., 1995 WL 313680, at *4 (N.Y. Sup. Ct. Mar. 29, 1995) (stating that
since "discrimination, if proved, is itself unlawful, the conduct cannot constitute *prima facie* tort").

a claim for which relief may be available.[14]

### C. Plaintiff's wrongful discharge theories fail to state a cause of action

Plaintiff's first and second causes of action combine claims that Plaintiff's discharge was against public policy, that it breached an implied contract between Plaintiff and Excellus, and that it was in violation of ERISA.  Am. Compl. ¶ 16.

#### 1. Plaintiff cannot bring a claim under ERISA

---

[14]  Defendants also argue that Plaintiff's *prima facie* tort claim is untimely.  Defs.' Mem. at 6.  In New York, there is a three-year statute of limitations to recover for personal injury.  N.Y. C.P.L.R. § 214(5).  However, actions for intentional torts (for example, assault, battery, false imprisonment, and malicious prosecution) have a one-year statute of limitations.  Id. § 215(3). Defendants contend that Plaintiff's *prima facie* tort claim alleges intentional harm whereby the one year statute of limitations should apply.  Reply at 6; also 10 Ellicott Square Court Corp v. Violet Realty, Inc., 916 N.Y.S.2d 705, 707-08 (N.Y. App. Div. 2011) (upholding dismissal of a *prima facie* tort claim either based on one-year statute of limitations; or, if three-year statute of limitations applied, because the case failed to state a cause of action); Casa De Meadows, Inc. (Cayman Islands) v. Zaman, 908 N.Y.S.2d 628, 632 (N.Y. App. Div. 2010); Russek v. Dag Media, Inc., 851 N.Y.S.2d 399, 400 (N.Y. App. Div. 2008); Yong Wen Mo v. Gee Ming Chan, 792 N.Y.S.2d 589, 591 (N.Y. App. Div. 2005) (applying one-year statute of limitations where allegations of "defendant's intentional and malicious conduct" was essentially an intentional tort claim).  The cases cited by Defendants rely upon the court's reasoning in Havell v. Islam,739 N.Y.S.2d 371, 372 (N.Y. App. Div. 2002).  However, although Havell upheld the dismissal of a *prima facie* tort claim "as barred by the one-year Statute of Limitations," the Court's reasoning was that the facts alleged were those of an intentional tort, and that plaintiff had merely labeled the tort *prima facie* as a means of avoiding the shorter statute of limitations for intentional torts.  Id.  Therefore, the Havell court did not strictly hold that a one-year statute of limitations applies to *prima facie* tort claims. Nevertheless, the Court agrees with the basic reasoning of applying the statute of limitations for intentional torts to a *prima facie* tort claim of this type.  Cf. Gallagher v. Dirs. Guild of Amer., Inc., 533 N.Y.S.2d 863, 865 (N.Y. App. Div. 1988) ("The operative distinction between the sort of causes of action governed by CPLR 215 and those within the scope of CPLR 214 is whether the particular claim," and the acts involved are "for an intentional tort or a tort sounding in negligence.").  But, contrary to Defendants' assertion, the three year statute of limitations has traditionally been applied to *prima facie* tort claims.  See, e.g., 16 N.Y. PRAC., N.Y. L. OF TORTS §§ 1:98, 19:24 (2011) (collecting cases); Susman v. Commerzbank Capital Mkts. Corp., 945 N.Y.S.2d 5, 6 (N.Y. App. Div. 2012).  Therefore, insofar as Plaintiff has failed to state a cause of action for *prima facie* tort, the Court does not resolve the recent conflict in New York State law as to which statute of limitations should be applicable.

Plaintiff contends that Plaintiff had a "fiduciary duty" to report Excellus's practice of "charging Medicare retirees a penalty," and so, after reporting Excellus's errant billing practices to Defendant Booth, Plaintiff was protected from retaliatory discharge under ERISA. Am. Compl. ¶¶ 1, 12-15. Defendant argues that Plaintiff is not a fiduciary and therefore does not have standing to sue under ERISA. See Reply at 7.

Section 1140 prohibits retaliation against persons who exercise their rights or inform on violations of rights safeguarded by ERISA. See 29 U.S.C. § 1140.[15] In enacting this provision, Congress sought primarily to "prevent[] unscrupulous employers from discharging or harassing their employees" in order to prevent them from "obtaining vested pension rights." West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980); see also Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988). Accordingly, Congress designed § 1140 to "protect the employment relationship" that gave raise to individuals' pension and employment benefit rights. Butler, 621 F.2d at 245 (giving examples of violations, such as expelling a union member for alleging pension fund improprieties or harassing an employee for discriminatory reasons that amounted to constructive discharge).

The scenario presented by Plaintiff does not readily analogize to the language or purpose of § 1140. Plaintiff was the employee of a company that provided health insurance plans, Plaintiff does not claim she was the beneficiary or participant in an ERISA plan at issue here. See generally Am. Compl.; Resp. at 5-6. Further, insofar as Plaintiff claims she was discharged for giving information that Excellus was engaged in an "unlawful practice of charging Medicare retirees a

---

[15] See also Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331, 334 (2d Cir. 1997) (explaining that the section "protects against (1) the disruption of employment privileges to prevent the vesting or enjoyment of benefit rights; (2) the disruption of employment privileges to punish the exercise of benefit rights; and (3) the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act.").

penalty," Plaintiff does not allege that this practice itself was a violation of ERISA.  See Am.

Compl. ¶ 12.  And, Plaintiff does not allege that her termination violated Plaintiff's own rights or

benefits under ERISA.  See generally Am. Compl. ¶¶ 11-16.  Therefore, on its face, Plaintiff's

Amended Complaint does not readily state a claim whereby Plaintiff would be entitled to relief

under Section 1140.

Nonetheless, even if the Court could infer from the above facts that Plaintiff's Amended

Complaint states a claim, Plaintiff does not have standing to bring a claim under ERISA.  Civil

actions under § 1140 may only be brought by an ERISA plan "participant, beneficiary, or fiduciary."

See § 1132(a)(3).  Here, Plaintiff makes no claim, and pleads no facts allowing the inference, that

Plaintiff was a participant or beneficiary of an ERISA plan.  See generally Am. Compl. ¶¶ 11-17;

Resp. at 5-6.  Therefore, the Court must determine whether Plaintiff is a fiduciary.

Under ERISA, a person is a fiduciary with respect to a plan if they have discretionary control

or authority over the plan, its assets, or its administration, or if they charge for, or have authority to

give, investment advice regarding the plan's assets.  See § 1002(21)(A).  Although "courts have

generally applied a liberal interpretation to 'fiduciary' within the ERISA context," the function

performed, and not a label, is used to determine whether an entity is a fiduciary.  DeLaurentis v. Job

Shop Technical Servs., 912 F. Supp. 57, 61 (E.D.N.Y. 1996) (internal citations omitted).

Merely providing professional services without exercising control or authority over a plan is

insufficient to make one a fiduciary.  See id. at 62 (citing Mertens v. Hewitt Assoc., 948 F.2d 607,

610 (9th Cir. 1991)); Int'l Bhd of Elec. Workers Local No. 241 Pension Plan, 354 F. Supp. 2d 203,

205 (N.D.N.Y. 2005).  Moreover, the guidelines published by the United States Department of

Labor make it clear that "a person who performs ministerial functions . . . for an employee benefit

plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary."  29 C.F.R. § 2509.75-8 (2012).  Examples of such non-fiduciary responsibilities include: applying rules to determine eligibility for participation in benefits plans; maintaining plan participants' records; calculating benefits; advising participants of their rights under plans; and processing claims.  Id.

In this case, Plaintiff merely makes conclusory statements that "Plaintiff had a fiduciary duty to address irregularities," Am. Compl. ¶ 15, and that Plaintiff should be protected as having a "personal fiduciary duty" under ERISA.  Resp. at 5.  However, the Court is not required to accept such "legal conclusions" as fact.  Iqbal, 556 U.S. at 678.

The only information provided about Plaintiff's role or job duties with Excellus is the statement in Plaintiff's Intake Questionnaire that Plaintiff was a Customer Service Representative. Intake Questionnaire at 1.  Even viewing this fact in the light most favorable to Plaintiff, such a role hardly seems to have the level of discretionary responsibility or authority required of a fiduciary under § 1002(21).  Since Plaintiff has failed to plead facts sufficient for the Court to infer that Plaintiff was a fiduciary, Plaintiff does not have standing to bring suit for retaliatory discharge under ERISA.  See § 1132(a)(3).  Consequently, Plaintiff has failed to state a claim that is "plausible on its face."  Iqbal, 556 U.S. at 678.

### 2. Plaintiff's termination did not violate any implied contract

Alternatively, Plaintiff argues that Plaintiff's retaliatory discharge breached an "implied contract."  Resp. at 6; Am. Compl. ¶¶ 12-16.  Since Murphy v. American Home Products Corp., 58 N.Y.2d 293 (N.Y. 1983), New York courts have followed the rule that "absent violation of a constitutional requirement, statute or contract 'an employer's right at any time to terminate an

employment at will remains unimpaired.'"  Sullivan v. Harnisch, 19 N.Y.3d 259, 262-63 (N.Y.

2012) (summarizing cases, internal citation omitted).  Currently, New York courts have recognized

only two judicial exceptions to this rule: (1) where there is an express limitation on an employer's

right to terminate (the "Weiner exception"), see Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458 (N.Y.

1982), and (2) where the nature of the employment relationship creates an implied contract that

limits the right to discharge at will (the "Wieder exception").  See Sullivan, 19 N.Y.3d at 263;

Wieder v. Skala, 80 N.Y.2d 628, 637-38 (N.Y. 1992).

Plaintiff does not argue that the Weiner exception applies to the instant case,[16] but rather

asks the Court to extend the Wieder exception to "protect" Plaintiff.  See Resp. at 5-6.[17]  In Wieder,

an attorney was terminated after he insisted that the law firm that employed him comply with

"disciplinary rules by reporting the professional misconduct allegedly committed by another

---

[16]  Weiner allows an at-will employee to state a cause of action for wrongful termination
where the employer had an express written policy limiting its right of discharge, and the employee
relied upon the policy.  See 57 N.Y.2d at 465-66 (finding employee was enticed to reject other
employment offers based on the assurance he would not be discharged without cause, and where he
was informed that the personnel handbook limited termination to just cause).  Nonetheless, New
York courts have strictly interpreted the Weiner exception.  See Sabetay v. Sterling Drug, Inc., 497
N.Y.S.2d 655 (N.Y. App. Div. 1986) (dismissing causes of action for wrongful discharge where
employee complied with corporate policies in disclosing the corporation's violations of tax laws
because there was no *express limitation* on the employer's right to discharge), aff'd, 506 N.E.2d 919
(N.Y. 1987).  Here, Plaintiff has made no factual claims from which the Court could infer that there
was any express limitation on Excellus's right to terminate that would present a breach of contract
claim analogous to Weiner.  See generally Am. Compl.

[17]  Plaintiff seems to combine Plaintiff's public policy and implied contract causes of action
by arguing that there is a claim for breach of implied contract where termination was in violation of
public policy.  Id.  However, in Wieder, the court expressly declined to recognize the "tort of
abusive discharge," in spite of "compelling" public policy considerations.  80 N.Y.2d at 638-39.
Public policy interests did not play a role in the Wieder court's finding that there was an implied
contract.  See id.  Therefore, Plaintiff's argument is misplaced, and the Court will limit its Wieder
analysis to the jurisprudential framework provided by Wieder and its progeny.  See also discussion
infra Part C.3.

associate." 80 N.Y.2d at 631.  The court held that, where the law firm's insistence that the plaintiff

violate these ethical rules of professional conduct "amounted to nothing less than a frustration of the

only legitimate purpose of the employment relationship," it violates a "fundamental" but

"unexpressed" understanding of the employment agreement.  Id. at 637-38.  In finding this implied

contract, the Court emphasized certain aspects of the attorney-law firm employment relationship:

that as an attorney, "plaintiff's performance of professional services . . . as a duly admitted member

of the Bar" were the "only purpose" of his employment; that the rule of professional conduct

implicated was "critical to the unique function of self-regulation" in the legal profession; and that,

by failing to comply, the plaintiff risked suspension or disbarment.  Id. at 635-36.

Accordingly, Wieder has been narrowly construed.  See Mulder v. Donaldson, Lufkin &

Jenrette, 623 N.Y.S.2d 560, 563 (N.Y. App. Div. 1995) (rejecting the lower court's expansive

construction of Wieder "beyond its limited application" when it extended the rule to "securities

dealers and most probably, to any licensed business or profession whose continued practice is

subject to compliance with laws or regulations governing the conduct of such business or

profession.") (internal citation omitted).[18]  The Wieder court specifically distinguished the attorney-

law firm relationship from the relationships at issue in Murphy and Weiner, where the courts

declined to find that there was an implied contract.  See 80 N.Y.2d at 635, 638 (explaining that the

plaintiffs in Murphy and Weiner, who were terminated for reporting accounting improprieties,

performed accounting services "as part of their primary line of responsibilities as part of corporate

_____

[18]  See also McConchie v. Wal-Mart Stores, Inc., 985 F. Supp. 273, 278 (N.D.N.Y. 1997)
(noting that Wieder is "so replete with language of limitation and qualification that it suggests the
Court intended its holding to encompass only law firm associates who find themselves in Wieder's
precise circumstances") (internal citation omitted).

management," and so the services were not "inseparable" from their employment, and emphasizing that the rules at issue were not "general rules of conduct and ethical standards governing both plaintiff and defendants in carrying out the sole aim of their joint enterprise, the practice of their profession.").

Here, Plaintiff has not pleaded facts sufficient to analogize Plaintiff's employment to that in Wieder, let alone sufficient to form the basis for an extension of the Wieder exception beyond the attorney employment scenario.  Plaintiff has pleaded no facts that establish any more than a personal ethical duty on the part of Plaintiff to report Excellus' practice of charging Medicare retirees a penalty.  See discussion supra Part C.1 (finding no fiduciary duty).  Plaintiff has not even alleged that Excellus had an internal code of ethics that would have required Plaintiff to report any billing irregularities discovered by Plaintiff.  See generally Am. Compl.

Moreover, as a Customer Services Representative, Plaintiff was not a professional subject to self-regulation.  Based on this job title alone, it cannot be said that reporting irregularities was "at the very core . . . indeed, the only purpose" of Plaintiff's employment.  Wieder, 80 N.Y.2d at 635. Therefore, viewed against the backdrop of Murphy and Weiner, Plaintiff's role as a Customer Service Representative does not provide a basis from which the Court could imply an obligation on the part of Excellus not to discharge Plaintiff.  Consequently, Plaintiff has failed to state a claim for wrongful discharge in violation of an implied contract.

### 3.  Plaintiff fails to state a claim for termination in violation of public policy

Finally, Plaintiff requests the Court to find that Plaintiff's discharge was wrongful because terminating Plaintiff for reporting Excellus's unlawful billing practices violated public policy.  Am. Compl. ¶¶ 12-16.  However, in New York, there is no common law public policy exception to the

discharge of at-will employees.[19]  See Lobosco v. N.Y. Tel. Co., 96 N.Y.2d 312, 316 (N.Y. 2001) (affirming that there is "no exception for firings that violate public policy such as . . . discharge for exposing an employer's illegal activities."); Murphy, 58 N.Y.2d at 300-01 (dismissing cause of action for wrongful discharge in violation of public policy where employee was fired after disclosing alleged accounting improprieties).  Moreover, the New York Court of Appeals has specifically counseled that, rather than subjecting traditional at-will employment doctrine to judicial erosion, any determination and declaration of public policy exceptions to at-will discharge should be resolved by the legislature.  Murphy, 58 N.Y.2d at 302.  Therefore, Plaintiff does not have a cause of action for discharge in violation of public policy.[20]  Further, Plaintiff's first and second causes of action must be dismissed because Plaintiff has failed to state a claim for wrongful discharge under either ERISA or at common law.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 3) is **GRANTED in part** and **DENIED in part**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 3) is **DENIED** with respect to

---

[19]  Plaintiff does not claim that Plaintiff's discharge violated any statutory limitations on termination for public policy reasons.

[20]  Plaintiff relies solely upon the Concurrence in Nicolaou v. Horizon Media, Inc., 402 F.3d 325, 331 (2d Cir. 2005) (Pooler, C.J., concurring), to make a public policy argument that Plaintiff should be protected as a "personal fiduciary."  Resp. at 5-6.  However, while informative as to the role and potential liability of ERISA plan fiduciaries, the Court in Nicolaou had already determined that the plaintiff, as "Director of Human Resources and Administration," was a fiduciary of a plan under ERISA.  402 F.3d at 325.  In the instant case, where Plaintiff has not made sufficient allegations that Plaintiff was a fiduciary, it would be inapposite to speculate further on the public policy implications of fiduciary duties.

Plaintiff's claims under New York Human Rights Law; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 3) is **DENIED** with respect to Plaintiff's ADA and ADEA claims; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 3) is **GRANTED** with respect to Plaintiff's claim for *prima facie* tort; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 3) is **GRANTED** with respect to Plaintiff's claims for wrongful discharge under ERISA, implied contract, and public policy; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:      August 06, 2012
            Albany, New York


Lawrence E. Kahn
U.S. District Judge