UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOAN E. EVANS,

                        Plaintiff,

   -against-                                        6:11-CV-1248 (LEK/DEP)

EXCELLUS HEALTH PLAN, INC. d/b/a
EXCELLUS BLUE CROSS BLUESHIELD,
*et al.*,

                        Defendants.

## **MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

Plaintiff Joan E. Evans ("Plaintiff") commenced this employment discrimination action on or about September 16, 2011, naming as defendants her former employer, Excellus Health Plan, Inc. ("Excellus"), and several Excellus employees (collectively, "Defendants"). See generally Dkt. No. 1, Ex. A ("Original Complaint"). Presently before the Court is Defendants' Motion for summary judgment. Dkt. No. 29 ("Motion"). For the reasons that follow, the Motion is granted.

**II.    FACTS**

Plaintiff worked as a Customer Service Representative for Excellus, reporting to Customer Service Supervisor Helen Roser ("Roser"). Dkt. Nos. 29-2 ("Defendants' SMF") ¶ 1; 38-7 ("Plaintiff's SMF") ¶ 1. On November 18, 2009, Roser met with Plaintiff to review Plaintiff's recent customer calls. Defs.' SMF ¶ 2; Pl.'s SMF ¶ 2. Lynn Marolf ("Marolf"), another Customer Service Supervisor, also attended the meeting. Defs.' SMF ¶ 2; Pl.'s SMF ¶ 2. At the end of the meeting, Plaintiff said, "This isn't fair," and told Roser, "I have never had a supervisor as worse as you," and "I'm not putting up with this crap anymore." Defs.' SMF ¶ 3; Pl.'s SMF ¶ 3. After

leaving the meeting, Plaintiff saw Team Lead Kathleen Bodmer ("Bodmer") and said, "Thanks a lot." Defs.' SMF ¶ 4; Pl.'s SMF ¶ 4.

Plaintiff contends that Roser was overly critical of Plaintiff, and that this meeting regarding her job performance was the culmination of Roser's disproportionate scrutiny of Plaintiff after Plaintiff complained to Roser about a discriminatory comment she had made. Pl.'s SMF ¶ 2. Dkt. No. 38-1 ("Plaintiff's Affidavit") ¶ 6. Specifically, Plaintiff previously overheard Roser use the term "hearing impaired bitch." Defs.' SMF ¶ 21; Pl.'s SMF ¶ 21. In 2009, long after hearing Roser use this term, Plaintiff told Roser that the comment bothered her because her son is disabled. Defs.' SMF ¶ 21; Pl.'s SMF ¶ 21.

Defendants state that, after the November 18 meeting, Roser and Marolf met with Ellen Wilson ("Wilson"), the Vice President of Human Resources. Defs.' SMF ¶ 6. They told Wilson that Plaintiff had become very loud and hostile, yelled various accusations at them, called them "bitches," and then left the room and confronted Bodmer in an accusatory, unprofessional manner. Id. Wilson relayed this information to Human Resources Manager Richard Pratt ("Pratt"), and then called her supervisor, Senior Vice President of Human Resources Pat Scheg. Id. ¶ 7. Wilson and Pratt also spoke with Customer Service Director John Shea. Id. That same day, Roser and Marolf submitted a written statement to the Human Resources Department. Id. ¶ 9. They reported that Plaintiff became very angry and accused Roser of being unfair and "pick[ing] on a retarded person in Rochester." Id. Bodmer also submitted a written statement describing her confrontation with Plaintiff. Id. ¶ 10.

Plaintiff also met with Pratt after the meeting with Roser. Defs.' SMF ¶ 12; Pl.'s SMF ¶ 12. According to Pratt, Plaintiff told him that Roser had been out to get her ever since Plaintiff called

2

Roser "mean and vindictive" for a statement Roser made about a disabled person in Rochester. Defs.' SMF ¶ 14; Pl.'s SMF ¶ 14. Defendants state that Plaintiff was then sent home for the rest of the day. Defs.' SMF ¶ 15. Plaintiff states that Pratt conferred with Roser and then suggested to Plaintiff that she go home for the rest of the day. Pl.'s SMF ¶ 15.

After leaving work, Plaintiff went to her doctor's office and reported that she lost control of her emotions in a meeting with her supervisor, that she "said a lot of things that she didn't mean to say," and that she "kind of lost it." Defs.' SMF ¶ 16; Pl.'s SMF ¶ 16.

After the November 18, 2009 incident, Plaintiff was fired. Defs.' SMF ¶¶ 17-19; Pl.'s SMF ¶¶ 17-19.

Plaintiff commenced this action on or around September 16, 2011, in New York Supreme Court, Oneida County. Original Compl. Defendants removed the action on October 18, 2011, and Plaintiff filed an Amended Complaint on November 18, 2011. Dkt. Nos. 1; 9 ("Amended Complaint"). On August 6, 2012, the Court dismissed all of Plaintiff's claims except for her age-based discrimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW §§ 290-301; and her retaliation claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the NYSHRL. Dkt. No. 22 ("Order"); see also Am. Compl. Defendants filed their Motion on September 30, 2013. Mot. Plaintiff responded, and Defendants replied. Dkt. Nos. 38-2 ("Response"); 39 ("Reply").

## III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party will bear the burden of proof on a specific issue at trial, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. Id. If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV.   DISCRIMINATION**

    **A.  Legal Standard**

Plaintiff alleges age-based disparate treatment in violation of the ADEA and NYSHRL.

Am. Compl. ¶¶ 18-33. ADEA and NYSHRL discrimination claims proceed according to the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105-06 & n.6 (2d Cir. 2010). Under this framework, a plaintiff must first make out a prima facie case by showing that: (1) she was over the age of 40; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). "A plaintiff's burden of establishing a *prima facie* case is *de minimis*." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001). If the plaintiff meets this minimal burden, the employer must offer a "clear and specific" nondiscriminatory reason for the adverse action. Meiri v. Dacon, 759 F.2d 989, 996-97 (2d Cir. 1985). Once such a reason is provided, the plaintiff can no longer rely on his prima facie case, but may prevail if he can show that the employer's determination was in fact the result of discrimination. Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). "'[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." Gorzynski, 596 F.3d at 106 (quoting Gross v. FBL Fin. Servs., 557 U.S. 167, 180 (2009)).

**B. Discussion**

Defendants argue that Plaintiff cannot establish a prima facie case because there are no facts suggesting that she was terminated under circumstances giving rise to an inference of discrimination. Mem. at 8-13.

Plaintiff states that Roser told employees at a meeting: "Just because you have a lot of years

5

on the job, doesn't mean your job's secure." Pl.'s Aff. ¶ 5. However, "an employee's age is analytically distinct from his years of service," Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993), and therefore this comment does not itself give rise to an inference of age-based discrimination.

Plaintiff's only other evidence on this element of the prima facie case is some basic statistical evidence regarding employees supervised by Roser. Resp. at 4-5. Specifically, Plaintiff asserts that from the time she was placed under Roser's supervision in 2003 until she filed a discrimination complaint in 2010, a total of 26 individuals over the age of 40 were under Roser's supervision, with 60 individuals under 40. Resp. at 4; Dkt. Nos. 38-3; 38-4. Of the individuals over 40, 31% voluntarily left, 46% were involuntarily terminated, and 23% remained in their positions. Dkt. No. 38-4. Of the employees under 40, 15% voluntarily left, 33% were involuntarily terminated, and 52% remained in their positions. Id. Plaintiff argues that this raw statistical evidence, which has not been analyzed by an expert, gives rise to an inference of discrimination. Resp. at 4-5.

"Although statistics play a much more substantial role in disparate impact cases, they are admissible to support a claim of discrimination even in a disparate treatment case involving a single plaintiff." Stratton v. Dep't for the Aging for City of New York, 132 F.3d 869, 877 (2d Cir. 1997). Here, however, Plaintiff's statistical evidence is insufficient to defeat summary judgment. Although expert analysis is not required, the absence of such analysis is problematic where, as here, the sample size is relatively small and the evidence is therefore of questionable reliability. See Nicholls v. Philips Semiconductor Mfg., 760 F. Supp. 2d 407, 419 (S.D.N.Y. 2011). Furthermore, the evidence presented by Plaintiff omits several pieces of information that would help to contextualize

the data. For instance, the data do not incorporate any information regarding performance evaluations, therefore precluding an inference that older employees were treated differently than similarly situated but younger employees. See Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) ("When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, . . . the plaintiff must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself (internal quotation marks omitted)). Additionally, the statistical evidence is limited to employees supervised by Roser. This presents a significant limitation because Roser is the decision maker to whom Plaintiff ascribes discriminatory animus. See Resp. at 4-6. A comparison with data regarding employees working under other supervisors might show whether older employees under Roser were more likely to be involuntarily terminated. However, no such evidence is in the record. Accordingly, although Plaintiff's burden of establishing an inference of discrimination on the prima facie case is *de minimis*, Plaintiff's rudimentary statistical evidence, on its own, is insufficient. See Miller v. Nat'l Ass'n of Sec. Dealers, Inc., 703 F. Supp. 2d 230, 245 (E.D.N.Y. 2010) ("[S]tatistical proof alone cannot ordinarily establish a prima facie case of disparate treatment."). Defendants are therefore entitled to summary judgment on Plaintiff's age discrimination claims.

### V. RETALIATION

#### A. Legal Standard

Retaliation claims under the ADA and the NYSHRL proceed according to the McDonnell Douglas burden-shifting framework. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Chiesa v. N.Y.S. Dep't of Labor, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009); Forrest v. Jewish Guild for the Blind, 819 N.E.2d 998, 1015 (N.Y. 2004). Accordingly, a plaintiff must first

establish a prima facie case by showing that: (1) the plaintiff engaged in statutorily protected activity; (2) the employer was aware of that activity; (3) the employer took adverse action against the plaintiff; and (4) there is a causal connection between the adverse action and the protected activity. Treglia, 313 F.3d at 719; Chiesa, 638 F. Supp. 2d at 323. "A plaintiff's burden of establishing a *prima facie* case is *de minimis*." Abdu-Brisson, 239 F.3d at 467. If the plaintiff meets this minimal burden, the burden shifts to the employer, who must offer legitimate, nonretaliatory reasons for the adverse action. See Delrio v. City of New York, 938 N.Y.S.2d 149, 151 (App. Div. 2012); see also Meiri v. Dacon, 759 F.2d 989, 996-97 (2d Cir. 1985). If the employer succeeds at the second stage, then the presumption of retaliation dissipates, and the plaintiff must show that, but for the protected activity, she would not have been terminated. See Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).

**B. Discussion**

Defendants argue, *inter alia*, that Plaintiff cannot show that she engaged in protected activity. Mem. at 19-21; Reply at 7-9. Plaintiff argues that she engaged in two instances of protected activity: (1) three months before her termination, she complained to Roser regarding the "hearing impaired bitch" comment; and (2) at the November 18, 2009 meeting, she stated that Roser picked on retarded people. Resp. at 8-10.

When an employee complains about or otherwise opposes conduct that she reasonably believes constitutes forbidden discrimination, that activity is statutorily protected. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). A complained-of employment practice need not actually violate a statute for the protected activity element of a retaliation claim to be satisfied. McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001). Rather, the plaintiff is only

8

required to have had a good faith, reasonable belief that she was opposing a discriminatory employment practice. Id. "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Here, Plaintiff has provided insufficient evidence that she reasonably believed she was opposing an unlawful employment practice on either of these occasions. As for the hearing impairment comment, a single, isolated offensive remark does not necessarily provide reason to believe that unlawful discrimination has occurred. See Kamrowski v. Morrison Mgmt. Specialist, No. 05-CV-9234, 2010 WL 3932354, at *22 (S.D.N.Y. Sept. 29, 2010) (collecting cases). Such is the case here, where the comment was not addressed to Plaintiff and Plaintiff did not know to whom the comment referred. See Abeln v. Ultra Life Batteries, No. 07-CV-6113, 2009 WL 857497, at *3 (W.D.N.Y. Mar. 30, 2009) (finding that complaint concerning isolated, offensive utterance that was not specifically directed toward the plaintiff did not support reasonable belief that unlawful discrimination had occurred). Furthermore, Plaintiff waited six years to complain about the comment, and when she did, she apparently qualified her complaint by stating that the comment bothered her because her son is disabled. Defs.' SMF ¶ 21. Based on the totality of these circumstances, a rational factfinder could not conclude that Plaintiff reasonably believed she was complaining about unlawful disability discrimination when she made her complaint to Roser.

The evidence surrounding the second purported instance of protected activity is also insufficient. Indeed, even at this late stage of the litigation, Plaintiff has yet to explain what allegedly discriminatory practice she was referring to when she said "you pick on retarded people." See Resp. at 9-10. Given that she made this statement in the course of a hostile meeting with her

9

supervisors and has identified no other evidence of discrimination toward mentally disabled employees, Plaintiff's unexplained complaint by itself cannot constitute protected activity. Accordingly, Plaintiff has failed to establish the first element of the prima facie case, and Defendants are therefore entitled to summary judgment on Plaintiff's retaliation claims.

## VI. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 29) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court enter judgment for Defendants and close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: September 30, 2014
Albany, New York

Lawrence E. Kahn
U.S. District Judge